Vincent L. ABELL, Appellant,

v.

Laihsing WANG & Helen
C. Young, Appellees.

No. 96–CV–412.

District of Columbia Court of Appeals.

Submitted April 16, 1997.
Decided May 29, 1997.

Marta Bertola, Washington, DC, for appellant.

Mary S. Akerley, Kensington, MD, for appellee Wang.

Alan Scott Gregory, Washington, DC, for appellee Young.

Before FERREN, FARRELL, and KING, Associate Judges.

FERREN, Associate Judge:

Plaintiff-appellant, Vincent L. Abell, appeals from the trial court's order granting summary judgment to defendants-appellees, Laihsing Wang and Helen Young, whose row house next door to Abell's allegedly had structural defects that caused damage to Abell's house. The court entered the order because there was nothing left of Abell's case. Previous rulings—sanctions for failure to comply with the court's scheduling order—had granted Wang's and Young's joint motion to strike Abell's Rule 34 request for his experts to inspect defendants' property, and had denied Abell's motion to file late his list of expert witnesses and his statement, pursuant to Super. Ct. Civ. R. 26(b)(4), explaining what his expert witnesses would say. Without expert testimony, therefore, Abell had no credible, provable story to tell the jury. Because we cannot tell whether the motions judges' summary decisions, without hearings, on these motions amounted to abuses of discretion, we reverse and remand for reconsideration of these rulings after a hearing.

## I.

On October 25, 1994, Abell, then pro se, filed a complaint against Wang and Young alleging the following facts: (1) in 1991, Abell purchased a row house at 3226 19th St., N.W.; (2) the house was physically connected to the neighboring house, then owned by Young; (3) Abell warned Young that certain structural defects in Young's property were capable of damaging Abell's property (specifically, that Young's house "pulled" on Abell's), and that Young needed to repair these defects; (4) Young declined to take any action but instead sold the property to Wang, who also was aware of these defects but, like Young, took no action; (5) as a result, when Abell contracted to sell his property in 1992 for $245,000, he was forced before closing to reduce the price to $200,000, in order to allow for repairs by the purchaser that

Young's and Wang's failure to act made necessary. Wang and Young filed answers denying liability.

On April 12, 1995, counsel for Wang and Young deposed Abell. During the deposition, Abell refused to answer certain questions he thought were irrelevant and invaded his privacy. At the same time, counsel asked Abell to provide documents pertaining to his real estate license, his tax returns, and a sketch of the structural defect by an expert whom Abell had consulted. Abell agreed to provide the sketch but not the tax returns (which, he said, as joint returns would violate his wife's privacy) or the real estate license (which he believed was irrelevant). Abell also refused to provide certain other documents specifically requested in writing (such as material related to renovation and work permits), and he refused to answer particular questions on deposition (such as requests for his social security number and felony convictions) because he found them irrelevant and invasive of his privacy. Finally, the parties agreed to conduct a joint inspection of Wang's property on June 6 (later changed by agreement to June 15) pursuant to Abell's request under Super. Ct. Civ. R. 34.

On April 14, 1995, Judge Dorsey issued a scheduling order, which required all parties to exchange discovery requests and witness lists by June 14, 1995. It also required Abell to provide, at the same time, a statement to Wang and Young pursuant to Super. Ct. Civ. R. 26(b)(4), explaining what his expert witnesses would establish with their testimony. The order required Wang and Young to respond with their own Rule 26(b)(4) statements no later than July 14. The order also established a deadline for filing all motions: August 29, 1995.

On May 24, 1995, counsel for Wang informed all the parties that, because Wang would not recover from back surgery by June 6, the later-agreed inspection date, June 15, would be used. As a result, the court's scheduling order was already in jeopardy, since Abell's experts' inspection of the property presumably was needed before Abell could file his Rule 26(b)(4) statement due June 14.

Abell did not attend the June 15 inspection. In a letter dated June 12, but actually sent by Federal Express on June 13, Abell notified Young and Wang that he wanted to reschedule the inspection for July 19. Abell made no attempt to telephone Wang and Young about the date change, relying exclusively on the mailed notice. Abell included in the Federal Express package his interrogatories and other discovery requests in accordance with the scheduling order, but he failed to include his witness list and Rule 26(b)(4) statement due on June 14.

Counsel for Wang received Abell's mailed notice on June 14.[1] She attempted to reach Abell by phone but succeeded only in reaching his answering machine. She left a message for Abell on the 14th explaining that she and counsel for Young could not reschedule on such short notice and that the inspection would happen the next day, as agreed, or not at all. On June 15, Young, Wang, and their counsel and experts went to the Wang property for the inspection. Abell did not appear and could not be reached by phone.

Nothing happened until July 3, when counsel for Wang notified Abell by letter that the defendants would file a motion to compel discovery of the documents Abell had refused to provide, as well as a motion to strike Abell's Rule 34 notice of intent to inspect the property. Counsel cited two reasons for the latter motion: Abell's failure to attend the June 15 inspection without adequate notice, and his failure to name an expert witness to conduct the inspection, which Abell himself admittedly was unqualified to do.

Wang and Young, whose experts presumably had inspected the property, filed their Rule 26(b)(4) statements, respectively, on July 12 and July 14, both on time under the scheduling order. Defendants, however, filed their joint witness list one month late, on July 14, without explanation and without seeking leave of court to file out of time.

Five weeks late, on July 20, Abell—without having inspected the property—provided defendants with a witness list and a Rule 26(b)(4) statement (as defendants acknowledge in their brief on appeal).[2] In his cover letter Abell apologized for neglecting to send these earlier, claiming that the failure had resulted from a simple oversight attributable to his focusing on the discovery request deadline and on his efforts to coordinate with his experts to try to make the June 15 inspection. He further suggested that, in any event, no harm had been done because defendants themselves had missed the deadline for their own witness list, filing it a month late. Finally, Abell said that he had thought the June 15 date was tentative, and he suggested that defendants—by waiting until the "end of May" to confirm the date—had failed to give him sufficient time to line up his experts. He also protested the threat of a motion to compel, stressing that defendants had failed to provide him with documents he had requested and had not yet answered his interrogatories.

On the same day, July 20, Young and Wang filed a "Joint Motion to Strike Plaintiff's Rule 34 Request and to Compel Discovery." In it, they asked the court to deny Abell's Rule 34 request for inspection of the property (since he had failed to name his experts essential to the inspection) and to award them attorney fees and costs for their own experts' time. They also asked the court to compel the production of Abell's expert's sketch, Abell's documents pertaining

---

1. Counsel for Young did not receive the notice from Abell until June 15. Counsel for Wang, however, notified counsel for Young when she received Abell's notice on June 14.

2. Abell's witness list and Rule 26(b)(4) statement were submitted to the trial court later, on August 25, as an appendix to a motion to file out of time (they were not included with an earlier August 2 cross-motion to file out of time). Although Abell testified at his April deposition that two of his experts (a carpenter and a mason) previously had inspected the Young premises, this inspection apparently took place in 1992 when Abell considered purchasing the property from Young. Abell's third expert, an engineer, never has had an opportunity to inspect the property. Because there had been no recent inspection of the property by Abell's experts—or any inspection at any time by Abell's engineer—it is not clear how the Rule 26(b)(4) statement could have provided their proposed testimonies on causation. The sufficiency of the statement is not at issue here, however, because the focus now is exclusively on whether the court abused its discretion in refusing to permit Abell to file the statement out of time.

to repairs, and the answers to deposition questions that Abell had refused to provide. Separately, Young and Wang responded to Abell's interrogatories and discovery requests.

On August 2, Abell filed "Plaintiff's Opposition to Defendants' Joint Motion to Strike Plaintiff's Rule 34 Request and to Compel Discovery and Cross-Motion For Leave to File Out of Time." In this dual pleading, reflecting his July 20 letter to defendants, Abell argued that his failure to comply with the scheduling order was the result of excusable neglect because of the pressing discovery due date and his need to coordinate with his experts. He said that he had been unable to reach his three experts and "get them to concur on the date." He called his inability to do so by June 15 the defendants' fault, because they had not confirmed the date of the inspection until May 24. He therefore asked the court for permission to file his expert witness list and Rule 26(b)(4) statement out of time. Abell pointed out that defendants themselves had filed their joint witness list a month late, without leave of the court, and would suffer little prejudice if the court granted the cross-motion. Abell, however, would suffer great prejudice, he said, if the court granted defendants' motion, because without an inspection of the property by his experts he would be unable to prove his case. As to defendants' motion to compel discovery, Abell made the same objections he had made to Young and Wang earlier regarding relevance and privacy, and he added that the requested documents relating to repairs did not exist because the repairs had been carried out under oral agreements.

On the same day, Abell sent several of the requested documents to defendants and noted in his cover letter that defendants' responses to his interrogatories and request for production of documents were incomplete. The next day Abell sent a separate letter to counsel for Young complaining about Young's failure to provide certain other discovery material, apparently concerning insurance.

There followed a series of dismissals and refilings on purely technical grounds. On August 17, Judge Dorsey dismissed Young's and Wang's joint motion without prejudice because it did not contain a certification that the parties had met face to face to attempt to resolve the difficulties pursuant to Super. Ct. Civ. R. 37(a). Judge Dorsey also dismissed Abell's cross-motion to file out of time, since it should have been filed as a separate motion. On August 25, Abell refiled his motion for leave to file out of time, to which defendants filed their opposition on September 9. Judge Dorsey, on September 15, again dismissed Abell's motion, this time for failing to attach a copy of the scheduling order pursuant to Superior Court General Order of January 2, 1995 for Cases Assigned to Calendar 12 (as amended). Abell refiled his motion a third time on September 20.

In the meantime, on August 29, Young and Wang refiled their joint motion to strike and to compel discovery, to which Abell filed his opposition on September 13. Also on August 29, Young and Wang filed a Joint Motion for Leave of Court to File Out of Time a joint motion for summary judgment once discovery was completed. The defendants argued that, although the scheduling order required all motions to be filed by August 29, they did not have access to defendant Young's own deposition testimony until August 25—testimony they deemed critical for preparation of their motion. They also noted their pending joint motion to strike and Abell's motion to file out of time, which presumably would have to be ruled upon before a summary judgment motion could be filed. On September 6, Judge Dorsey denied Young's and Wang's joint motion for leave to file out of time, citing the same procedural reason that he would use to dismiss Abell's motion on September 15: failure to attach a copy of the scheduling order. Defendants refiled their joint motion to file out of time on September 29, and Abell filed his opposition on October 6.

On November 21, Judge Dorsey granted Young's and Wang's second motion to strike Abell's Rule 34 request to enter and inspect the Wang property. The judge also granted their motion to compel discovery, except as to documents requested orally (which the court granted defendants time to resubmit to Abell in writing, although the discovery deadline had expired on June 14). Judge

Dorsey did not hold a hearing on the motion. Nor did he appear to consider lesser sanctions, such as simply awarding Young and Wang the costs of appearing with their experts and counsel for the canceled inspection on June 15. Nor did the judge make any finding of prejudice.

On December 5, Abell—now represented by counsel—filed a motion for reconsideration; defendants filed their opposition on December 15. On January 5, 1996, Judge Salzman issued orders summarily denying Abell's motion for reconsideration and denying Abell's outstanding motion to file his witness list and Rule 26(b)(4) statement out of time. Judge Salzman did not explain his reasons for either order. Also in summary fashion, Judge Salzman—on the same day—granted Young's and Wang's joint motion for leave of court to file out of time their motion for summary judgment. Although Judge Salzman's order set a deadline for defendants to file by January 23, Young and Wang did not file for summary judgment until January 31. Abell filed his opposition on February 20.

On March 1, 1996, Judge Retchin held a hearing on defendants' summary judgment motion. After brief discussion with counsel, the judge concluded that Abell could not prevail without expert testimony. Because Judge Dorsey's order denying a Rule 34 inspection and Judge Salzman's order denying Abell leave to file his witness list and Rule 26(b)(4) statement out of time prevented Abell from introducing expert testimony, Judge Retchin saw no way for Abell to succeed at trial and thus granted summary judgment for Young and Wang. A written order to this effect was entered on March 5, and Abell filed a timely notice of appeal.

## II.

Before we begin our analysis, it is important to consider the scheduling background against which these events took place. Until mid–1991, the Superior Court operated under a "master calendar" system, where no single judge could expect to control a case from start to finish and delay became nearly inevitable. *See Liverpool v. Georgetown Univ. Med. Ctr.*, 121 Daily Wash. L. Rptr. 129, 135 (D.C.Super.Ct.1993). The Superior Court has since moved to a system of individually calendared cases which, through the use of scheduling orders and pre-trial conferences, gives parties clear notice of deadlines and has "place[d] civil cases on [a] much more rigorous and formal track, in an effort to alleviate some of the languor which [previously had] often plague[d] the civil calendar." *Solomon v. Fairfax Village Condominium IV Unit Owner's Ass'n*, 621 A.2d 378, 379–80 (D.C.1993); *accord Liverpool*, 121 Daily Wash. L. Rptr. at 135. In *Solomon*, we recognized that this new system "is a carefully crafted, detailed road map which parties must be expected to follow strictly, if the important underlying objectives are to be achieved." *Solomon*, 621 A.2d at 380. As a result, this court has become far more sensitive to the prejudice—both to the party moving for sanctions and to the administration of justice—that results from delay. *See Perry v. Sera*, 623 A.2d 1210, 1219 (D.C.1993) ("Noncompliance with court orders and rules may cause the system to bog down and may adversely affect other litigants.... [T]his type of delay ... prejudices not only the defendant but also the ability of other persons ... to utilize the system"); *see also Van Man v. District of Columbia*, 663 A.2d 1245, 1247 (D.C.1995) (noting that "even where little or no prejudice results to a particular defendant, dismissal may in appropriate circumstances be justified"); *Chapman v. Norwind*, 653 A.2d 383, 387 n. 5 (D.C.1995).

Nonetheless, we must balance this concern for judicial economy against the strong judicial and societal preference for determining cases on the merits. *See Johnson v. Lustine Realty Co.*, 640 A.2d 708, 709 (D.C.1994) (holding that although appellate court was sympathetic to trial court's reluctance to reopen matter simply to determine who should pay $63 in court costs, reversal was required because of preference for decision on merits); *Iannucci v. Pearlstein*, 629 A.2d 555, 559 (D.C.1993) (noting that willfulness and prejudice must be balanced against "the societal preference for a decision on the merits" before concluding that lesser sanction is insufficient (internal quotation marks omitted)); *Perry*, 623 A.2d at 1219 n. 23 (recognizing preference for decision on mer-

its as competing with goal of scheduling system). The explicit factors—discussed below—which the trial court must consider when assessing the proper sanction for a discovery violation flow from this strong preference for a decision on the merits. *See Shimer v. Edwards*, 482 A.2d 399, 401 (D.C. 1984) (noting that "dismissal runs counter to valid societal preference for a decision on the merits"). Although the trial court now may accord greater weight than previously allowed for prejudice caused by delay to the overall administration of justice, the trial court still must consider "the totality of circumstances" of each case, *Van Man*, 663 A.2d at 1248, and thus a failure to evaluate all the appropriate factors is likely to warrant reversal. *See Shimer*, 482 A.2d at 400–01. Furthermore, " '[w]hile a trial court is not required to state its reasons for choosing dismissal or a default judgment rather than some lesser sanction, a court which fails to state any reasons at all runs a serious risk that its decision will not withstand appellate scrutiny.' " *District of Columbia v. Greene*, 539 A.2d 1082, 1084 (D.C.1988) (quoting *Ungar Motors v. Abdemoulaie*, 463 A.2d 686, 689 (D.C.1983)).

### III.

#### A.

██ Super. Ct. Civ. R. 37 is the rule governing sanctions for failure to comply with discovery orders. *See Perry*, 623 A.2d at 1215–17 (D.C.1993) (applying Rule 37 sanctions to failure to answer interrogatories and produce documents under Rule 34 and failure to produce expert witness opinions under Rule 26). When a party moves for dismissal of the complaint under Rule 37, the court will abuse its discretion in granting the motion unless there are " 'severe circumstances.' " *Id.* at 1218 (quoting *Braxton v. Howard Univ.*, 472 A.2d 1363, 1365 (D.C. 1984)). Two factors dictate whether "severe circumstances" are present: (1) prejudice to the party who has not received the discovery sought, and (2) the extent to which the default was willful. *See id.* To justify dismissal, moreover, "there must be some indication that the trial court considered less severe sanctions." *Id.*

In this case, Judge Dorsey's order granting the motion to strike Abell's Rule 34 request to inspect the property and Judge Salzman's order denying Abell's motion to file his witness list and Rule 26(b)(4) statement out of time were interrelated. Although Abell did attempt to file his Rule 26(b)(4) statement without having the benefit of the intended inspection of the property by his experts, Judge Dorsey's denial of Abell's request to inspect not only limited his ability to prepare a complete Rule 26(b)(4) statement but also effectively prevented his experts from preparing Abell's case. Judge Salzman's order then formally cancelled Abell's expert testimony. The two rulings, therefore, led inevitably to Judge Retchin's order granting Wang and Young summary judgment; without experts, Abell had no case.

██ In applying Rule 37 to sanctions for noncompliance with discovery orders short of dismissing the case—namely, exclusion of evidence as Judge Dorsey's and Judge Salzman's rulings accomplished—this court has developed criteria more refined than general references to prejudice, willfulness, and the effectiveness of less severe sanctions. We have cited five factors for motions judges to consider:

(1) whether allowing the evidence would incurably surprise or prejudice the opposite party;

(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;

(3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully;

(4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and

(5) the impact of excluding the proposed testimony on the completeness of information before the court or jury.

*Weiner v. Kneller*, 557 A.2d 1306, 1311–12 (D.C.1989) (reversing exclusion of expert testimony for failure to comply with Rule 26(b)(4)); *accord Nolan v. Nolan*, 568 A.2d

479, 487–88 (D.C.1990) (reversing exclusion of documentary evidence not produced during discovery where trial court refused to consider contents of proposed document). Although these factors apply to the exclusion of evidence sanction, rather than to dismissals, we are satisfied that they should apply also when orders limited to excluding evidence obviously will have the effect of dismissal. They incorporate the prejudice/willfulness criteria; they add criteria that focus the court's attention on the impact of the exclusion—including, of course, likely dismissal or summary judgment; and they do not preclude application of a critical, traditional consideration when termination of the lawsuit is the likely result of the exclusion: whether a less severe sanction than exclusion/dismissal is warranted.[3]

## B.

■ Turning, first, to the Rule 34 issue, we see little analysis of any, let alone all, of the *Weiner* factors in Judge Dorsey's order granting defendants' motion to strike Abell's request to inspect the property with his experts. He appears to grant the motion simply because Abell, without giving adequate notice, did not appear for the inspection for his benefit.

> The court finds that Plaintiff's Rule 34 Request for Permission of Entry Upon Land should be denied because Plaintiff unilaterally and without notice failed to attend an inspection scheduled for June 15, 1995. While Plaintiff explains why he did not appear to inspect the property, he offers no explanation for his failure to timely notify counsel that he would not appear June 15, 1995 and that he wished to reschedule the inspection. Plaintiff's conduct is particularly inappropriate because the inspection was scheduled for Plaintiff's benefit and at Plaintiff's request.

3. The last two *Weiner* factors are likely to be useful primarily where the case goes to trial and admissibility of evidence is contested on the ground that it should have been disclosed earlier, during discovery.

4. Defendants allege that this excuse is false. In their brief they suggest that one reasonably could infer from Abell's conduct that he had failed to obtain the services of his third expert, an engi-

From this sparse reasoning addressed to a complicated factual record, we cannot say whether Judge Dorsey abused his discretion.

In the first place, we cannot determine from the ruling whether Judge Dorsey believed Abell's conduct was willful. *See Weiner*, 557 A.2d at 1311. Certainly the evidence could support a finding of willfulness. Abell used the mail rather than the telephone to notify Wang and Young—no earlier than June 14—of his unavailability for the inspection on June 15; he was unavailable by phone that day before, and the day of, the scheduled inspection; and, in connection with that inspection, he apparently took no action of any kind to supply defendants with the names of his expert witnesses and their proposed testimony until prodded by defendants' threat on July 3 to file a motion for sanctions. *See Chapman*, 653 A.2d at 387 (affirming dismissal where plaintiffs' failure to produce requested documents and to appear for deposition supported finding of willfulness); *Solomon*, 621 A.2d at 380 (noting that single violation, coupled with other dilatory behavior, may rise to the level of willful violation).

On the other hand, Abell consistently has proffered that his scheduling problems resulted from the fact that all parties had regarded the June 15 inspection date as tentative; that the defendants' had given late (May 24) notice of the June 15 inspection date; and that Abell, as a result, had considerable difficulty in coordinating an acceptable date with his experts.[4] Furthermore, it is important to note that Abell had no prior history as a dilatory plaintiff. *Compare Perry*, 623 A.2d at 1218 (noting that plaintiff was not only personally at fault but had "demonstrated a pattern of noncooperation and dilatoriness") *with Van Man*, 663 A.2d at 1247 (concluding that lack of any previous dilatory behavior mitigated plaintiff's negligence in failing to confirm trial date). If Abell's rep-

neer, in time for the inspection, and that his unilateral attempt to change the date of the inspection was nothing more than a deliberate ignoring of an agreed-upon schedule so that he could continue to hunt for an expert. If the trial court found that the defendant deliberately misrepresented the status of his experts to the court, this would support a showing of willfulness.

resentations were believable, based in part on his prior behavior, then presumably the judge would have to find that Abell's failure to appear, although "inappropriate," was not willful. *See Taylor v. Carreno*, 528 A.2d 1241, 1242 (D.C.1987) (noting that failure to obtain expert in time was not willful).

Under the current system of calendaring described above, a finding of willfulness in calling off the scheduled inspection would go a considerable way toward supporting the judge's decision to strike—but not all the way. The other *Weiner* factors had to be addressed as well. Judge Dorsey did not hold a hearing, however, and so his ability to appraise Abell's culpability in *Weiner* terms was limited. Without a trial court hearing, moreover, we cannot say ourselves whether, if Judge Dorsey had applied all the *Weiner* factors, he would—or would not—have abused his discretion in granting the motion to strike.

Abell states a case for abuse of discretion that cannot be resolved without a hearing. First, to reiterate, he says his failure to appear for the inspection on June 15 was excusable neglect, not willfulness. Second, as he also argued in his opposition to the motion to strike, court-ordered withdrawal of his right to inspect the property with his experts would "incurably prejudice" his case. *Weiner*, 557 A.2d at 1311. It would eliminate the basis for offering expert testimony at trial, because his experts—particularly his engineer, who had never seen the property— would not know what to talk about. The jury, therefore, to say the least, would lack "completeness of information," *Id.* at 1312, since Abell's case would fold.

Third, according to Abell, the record does not support exclusion of the evidence on grounds of "surprise or prejudice" to the defendants. *Id.* at 1311. By the time Judge Dorsey ruled on their motion, Young and Wang were fully aware of what Abell hoped to prove with his inspection, since Abell had given them his Rule 26(b)(4) statement, and they never have claimed any surprise or difficulty attributable to Abell in filing their own Rule 26(b)(4) statement. *Compare Regional Redevelopment Corp. v. Hoke*, 547 A.2d 1006, 1008 (D.C.1988) (noting that ab-

sence of surprise negated showing of prejudice) *and Corley v. BP Oil Corp.*, 402 A.2d 1258, 1262 (D.C.1979) (same) *with Perry*, 623 A.2d at 1219–20 (noting that defendant was unable to construct defense because of plaintiff's dilatory response to discovery requests).

Fourth, it appears that no trial date had been set and that when issue was joined on the motion to strike the deadline for filing all motions (August 29, 1995) had not passed. *See Iannucci*, 629 A.2d at 561 (concluding that prejudice was mitigated since no trial date had been set and final date for filing motions had not passed); *Greene*, 539 A.2d at 1084 (noting that prejudice was mitigated since case was still "relatively new" and trial date had not been set; *Ungar Motors*, 463 A.2d at 689 (noting that fact that no trial date had been set was mitigating factor).

Fifth, the fact that defendants filed their own witness list late further mitigates the prejudice attributable to Abell. *See Ungar Motors*, 463 A.2d at 689 (noting that plaintiff was not solely responsible for "snail-like" pace of litigation).

Finally, by June 14, 1995, Abell announced he was ready to cure his default by proposing to reschedule the inspection on a specified date, July 19—little more than a month after the June 15 date he refused to honor, only five days later than defendants filed (on July 14) their own Rule 26(b)(4) statements and joint witness list (the latter a month late), and one day before defendants filed (on July 20) their joint motion to strike. *See Shimer*, 482 A.2d at 400–401 (noting that there was no prejudice where plaintiff was prepared to deliver answers to interrogatories "within a day or so"); *Ungar Motors*, 463 A.2d at 687, 689 (noting that response to interrogatories, although two months late, was filed before court ruled on sanctions motion).

On the other hand, the motions judge might find, after a hearing, that the delay in this case was attributable primarily to Abell, a serious aggravating factor. *See Perry*, 623 A.2d at 1218–19. Moreover, at the very least, defendants did suffer expenses because of Abell's abrupt cancellation of the scheduled June 15 inspection, although there is no indication of record that these costs reached

the level where we have found prejudice to defendants warranting the severest sanction, dismissal. *See Solomon,* 621 A.2d at 380 (sustaining dismissal of complaint where pro se plaintiff failed to file pretrial statement and to appear at pretrial conference while owing defendant nearly $20,000). Arguably, therefore, any prejudice from Abell's abrupt cancellation could have been remedied by assessing the expenses attributable to the cancellation against Abell. *See Shimer,* 482 A.2d at 400–401 (noting that there was no prejudice to defendant where plaintiff agreed to pay additional costs incurred by defendant for plaintiff's failure to sign interrogatories in time).[5] Indeed, the fact that Judge Dorsey failed to consider any such lesser sanction makes it significantly more difficult to affirm his order on appeal. *See Ungar Motors,* 463 A.2d at 689.

Because the record is yet unclear for purposes of applying the *Weiner* factors, we conclude that the only appropriate course is to remand for a hearing on the motion to strike Abell's Rule 34 request. Sanctions for violations of discovery orders are left to the sound discretion of the trial court in large part because the judge is "in the best position to evaluate the immediate circumstances of the case and the credibility of the parties." *Firestone v. Harris,* 414 A.2d 526, 528 (D.C. 1980). Here, Judge Dorsey not only did not hold a hearing on the Rule 34 issue but also never met with the parties, as far as the record shows, on any matter. Judge Dorsey's familiarity with the case and with the parties, therefore, is derived totally from the filings of record and does not now exceed the familiarity that we can derive from the record ourselves. We are thus not inclined simply to defer to the judge's discretion at this point in the proceedings, in view of the arguments Abell makes that the trial court has not—for all we can tell—assessed. *See Byrd v. United States,* 614 A.2d 25, 30 (D.C. 1992) (noting that "findings based on documents or other writings merit little deference or none at all").

## C.

■ We reach the same conclusion for Judge Salzman's order denying Abell leave to file his witness list and Rule 26(b)(4) statement out of time; a remand and hearing will be required.

Judge Salzman specified no reason for his order. Abell noted that defendants themselves had filed their own witness list a month late and without leave of court. Furthermore, concededly they received a copy of Abell's witness list and Rule 26(b)(4) statement on July 20, within six days of Young's and Wang's late filing of their own joint witness list. Indeed, it appears that Abell was penalized for seeking leave of court to file his witness list late instead of presuming to do so without leave of court as defendants themselves did without penalty. Judge Salzman's implicit endorsement of Wang's and Young's end run around the rules of the court is at odds with the very purpose of the scheduling order: to encourage strict compliance. Indeed, at the very time Judge Salzman was denying Abell leave to file, the judge was granting the defendants extra time to make additional written discovery requests of Abell after the deadline.

Even if Abell bears greater responsibility than Wang and Young for the overall delay, the judge's response appears to have been disproportionately harsh—at least without an explanation, based on record facts, to justify it. *See Van Man,* 663 A.2d at 1247–48 (concluding that where both parties have potentially contributed to the delay, dismissal with prejudice will only be justified where one party acts egregiously).

Young and Wang argue that Abell has failed to explain, adequately, his failure to file his expert witness list and Rule 26(b)(4) statement on time. They add that Abell has tried to invoke his pro se status as an excuse for late filing. We agree that, although a plaintiff has the right to proceed pro se, such a litigant can expect no special treatment from the court. *See Solomon,* 621 A.2d at

---

5. We do not imply that the only choices for sanctions in this case are defendants' costs or dismissal. If on remand the trial court were to conclude, after a hearing, that a sanction short of dismissal was warranted, the trial court would be free to craft any appropriate sanction authorized by Super. Ct. Civ. R. 37.

380 n. 2; *Paton v. Rose,* 191 A.2d 455 (D.C. 1963). On the other hand, we note that Young and Wang, in their joint motion to file for summary judgment out of time, proffered excuses for late filing similar to those cited by Abell for missing deadlines: unavailability of certain deposition transcripts and the pendency of other unresolved matters in the litigation—excuses of the kind a hearing is necessary to evaluate.

While defendants undoubtedly believe that the holdup on inspection was attributable primarily to Abell, he has argued just as vigorously that defendants caused the inspection delay by putting off definitive scheduling until it was too late for him to marshall his experts in time to meet defendants' schedule. Neither of the motions judges who dealt with these issues ever resolved in any meaningful way where the fault, if any, lay. Although pro se litigants are entitled to no special treatment, they are not entitled to less favorable treatment than counseled parties, as would appear the case might be here from the summary dispositions given to each side.

We believe the reasons supporting Abell's position outlined earlier in our discussion of the Rule 34 request apply even more strongly in Abell's favor on the witness list and Rule 26(b)(4) issues. Wang and Young never have claimed meaningful prejudice from Abell's delay in filing those statements—certainly no dollar costs to defendants are involved as they are in the Rule 34 issue—and, in particular, defendants never have asserted that Abell's delay in filing his witness list and Rule 26(b)(4) statement caused defendants to rethink the selection of their experts or the contents of their experts' testimony. A hearing is therefore required on Judge Salzman's order, in order to assure that the *Weiner* factors are properly applied.

\*    \*    \*    \*    \*    \*

In sum, we reverse the order granting summary judgment derived from Judge Dorsey's and Judge Salzman's rulings, and we remand with instructions for the trial court to hold a hearing and reconsider (1) defendants' joint motion to strike Abell's request to inspect Wang's property, and (2) Abell's motion to file his expert witness list and Rule 26(b)(4) statement out of time—before reconsidering summary judgment.

*So ordered.*