Carol A. FORTI, Appellant,

v.

**ASHCRAFT & GEREL,**
et al., Appellees.

No. 03–CV–632.

District of Columbia Court of Appeals.

Argued Dec. 16, 2004.

Decided Dec. 30, 2004.

Carol A. Forti, pro se.

David P. Durbin, with whom Anjuma K. Goswami, Washington, DC, was on the brief, for appellees.

Before SCHWELB and FARRELL, Associate Judges, and BELSON, Senior Judge.

PER CURIAM:

In this action for legal malpractice, the trial court granted summary judgment to the defendants after the plaintiff-appellant, herself an attorney, failed to meet repeated deadlines within which to name an expert witness and file a corresponding statement pursuant to Super. Ct. Civ. R. 26(b)(4). On appeal, the plaintiff does not dispute that expert testimony was necessary to prove legal malpractice by the defendants in conducting her underlying (and unsuccessful) suit for medical malpractice. *See O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C.1982). She argues instead that the trial court abused its discretion by not granting her still more time in which to name an expert witness, because her inability to meet the deadlines the court had set resulted entirely—in her view—from the failure of the Court Reporting and Recording Division of the Superior Court to provide a complete and accurate transcript of the testimony in the underlying case.

The trial court, after a hearing, rejected this excuse in a thorough and carefully explained written decision, concluding *in-*

*ter alia* that the plaintiff's failure to meet the discovery deadlines was willful. We adopt that opinion and append it hereto.[1] To the trial court's analysis we add only that Super. Ct. Civ. R. 56(f) provides a means by which the plaintiff could have shown, through an affidavit of any legal expert she had consulted, why specific transcript portions then unavailable to the expert were necessary to the rendering of an opinion. That the plaintiff made no such showing lends additional support to the trial court's conclusion that she had not named an expert because, in fact, she had none "willing to agree that legal malpractice was committed here."

The trial court's order granting summary judgment is, therefore,

*Affirmed.*

## APPENDIX

**CAROL A. FORTI,**

   **Plaintiff,**

v.

**ASHCRAFT & GEREL, LLP, et al.,**

   **Defendants.**

Civil Action No. 02-2028
Judge Boasberg
Calendar 10

*ORDER (1) DENYING PLAINTIFF'S MOTION TO VACATE ORAL "FINAL" ORDER GIVEN APRIL 18, 2003, AND (2) GRANTING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT*

The Court has reviewed Defendants' Renewed Motion for Summary Judgment, Plaintiff's Status Report to the Court Regarding Transcripts and Motion for En-

---

**1.** We omit a document (the Poss Memorandum) that the trial court attached to its opinion.

largement of Time to File Proponent's 26(b)(4) Statement, Plaintiff's Motion to Vacate Oral "Final" Order Given April 18, 2003, Defendants' Opposition, and Plaintiff's Response.

## I. Background

As the procedural history of this matter plays a significant role in the Court's decision, it is necessary to set forth that history in some detail.

Plaintiff filed her Complaint in this matter on March 20, 2002, asserting that Defendants committed legal malpractice while representing her in an unsuccessful medical malpractice case against her podiatrist.[1] At the initial scheduling conference in this matter, held on June 21, 2002, Judge Mize placed the case on Track 3, the slowest track, which permitted Plaintiff extra time to conduct discovery and fulfill her other responsibilities under the rules. According to the Scheduling Order, Plaintiff's deadline to file her Rule 26(b)(4) statement was October 5, 2002.

Defendants filed their initial motion for summary judgment on July 15, 2002. After Plaintiff was given additional time to respond, this Court inherited the calendar and denied the motion on October 25, 2002. Defendants then moved for reconsideration, noting that Plaintiff had failed to name an expert witness within the deadline set by the Court at the scheduling conference. In responding, Plaintiff conceded that she had not named an expert, but argued that "very legitimate reasons beyond her control prevented her from filing [her Rule 26(b)(4) statement on time]." Opp. at 3. More specifically, Plaintiff said that she had been ill for eight

days, that the previous expert witness she had identified had informed her he was unavailable, and that other "experts have prior commitments that prevent them serving as expert witnesses at this trial." *Id.* She made such a claim without identifying any such potential expert, without describing what the "prior commitments" were, and without explaining how these prior commitments conflicted with a trial date that had not yet been set.

Plaintiff simultaneously filed on November 21, 2002, 47 days after the expiration of her expert deadline, a Motion for Enlargement of Time to File Proponent's 26(b)(4) Statement. Citing her illness and the unavailability of her prior expert, she asked for an extension to December 13, 2002. At no time in such Motion did Plaintiff ever explain why she had waited so long after the expiration of the October 5, 2002, deadline to file a Motion for Enlargement of Time. Despite Defendants' Opposition, the Court granted Plaintiff's Motion and gave her until December 27, 2002, to file her 26(b)(4) statement. The Court, however, warned that "[f]urther failure to abide by Court deadlines ... may well result in adverse rulings." Order of Dec. 12, 2002, at 1. Although the defense opposed such further extension, the Court, seeking a decision on the merits, stated that it would permit Plaintiff to name an expert, following which Defendants could file a renewed motion for summary judgment.

On December 17, 2002, Plaintiff moved to stay the case, arguing that it made sense to await the decision of the Court of Appeals on the appeal of the underlying medical malpractice case. When Defendants opposed, Plaintiff filed a reply brief on December 30, 2002, in which for the

---

1. Plaintiff, although proceeding *pro se* in the instant matter, has represented that she has been a member of the Pennsylvania Bar for fifteen years, as well as a member of the Bar of the Supreme Court of the United States. Opp., filed Aug. 13, 2002, at 1.

first time in this litigation she raised the issue of the unavailability of transcripts. In no previous motion for enlargement of time or otherwise had Plaintiff mentioned any transcript difficulty. The Court denied her request in its Order of the same date. In a pleading seeking reconsideration, filed on January 21, 2003, Plaintiff stated, "The unavailability of the transcripts is the sole reason why Plaintiff has not submitted her 26(b)(4) statement." Opp. at 6. In denying reconsideration, the Court also noted that Plaintiff had not sought a stay until the transcripts were prepared, but, rather, until the Court of Appeals had rendered its decision. Order of Jan. 28, 2003, at 2.

The Court's December 27, 2002, deadline having long since passed without any 26(b)(4) statement, Defendants renewed their motion for summary judgment on March 6, 2003. In response, Plaintiff filed a "Status Report" on March 22, 2003, claiming that she could finally pick up her transcripts on March 24, 2003, and needed a further extension until May 15, 2003, to name her expert after such expert had had sufficient time to review the transcripts. Her basis for extension, once again, was that the Court Reporting and Recording Division ("CRRD") had been so dilatory in completing her transcripts. She called it a "horrendous problem[ ]." Report at 1. At no time did Plaintiff explain why she could not procure an expert without the transcripts.

Plaintiff filed a further Status Report on April 12, 2003, concerning the transcripts that she had picked up on March 24. She alleged that testimony was missing from the transcripts and that "parts of the transcription are so garbled that it is impossible to make any sense out of the testimony." Report at 1. She castigated the CRRD for "gross incompetence and ineffi-

ciency" and claimed that she needed three days to submit a list of errors for correction. *Id.* at 2. Once again, she never explained why she could not take the transcripts to her expert prior to corrections and simply inform such expert what the corrections would be.

In an effort to determine exactly what was occurring in relation to the transcripts, the Court set a hearing for April 18, 2003, and invited submissions from the CRRD. In an April 17, 2003, memorandum, read into the record by the Court, Darlene Ellis, Deputy Director of the CRRD, set forth her dealings with Plaintiff. In addition, Gregg Poss, Associate Director of the CRRD, testified. Theirs was a far different account from Plaintiff's. They politely described the difficulties they had encountered with Plaintiff, who continued to insist on transcripts of some testimony that had never been given and became angry and difficult to assist. More significant, Ellis noted that all of the transcripts had been completed between January 3 and February 13, 2003, yet Plaintiff, despite calls from the CRRD, never picked them up until March 24, 2003, a delay quite inexplicable given Plaintiff's representations to the Court about the source of the delay. When asked by the Court about this delay at the April 18, 2003, hearing, Plaintiff had no sensible explanation.

In addition, Plaintiff never explained at the hearing, despite numerous opportunities to do so, why putative errors in the transcripts had prevented her from showing the transcripts to an expert. She somehow claimed that the errors were so fundamental that an expert could not understand the transcripts without their correction. Only once corrections were made, Plaintiff claimed, could she finally go about the business of securing an expert.

Unable to credit this explanation, but still hesitant to dismiss Plaintiff's case without giving her every reasonable opportunity to find an expert, the Court at the hearing gave Plaintiff until May 5, 2003, six full weeks from the date she picked up the transcripts, to file her 26(b)(4) statement. Plaintiff indicated that she would immediately get her corrections to the CRRD, but, instead, delayed ten more days because of alleged illness and computer problems. Ultimately, instead of filing her 26(b)(4) statement on May 5, Plaintiff filed a Motion to Vacate that deadline because of the number of corrections she alleged had to be made. In this Motion, she castigated once again the "gross inefficiency, sloppiness[,] laziness [sic], and unprofessionalism of the Court Reporters' Office." Motion at 4. When Defendants opposed this latest motion, Plaintiff filed a response in which she called defense counsel "a congenital liar" and complained again about the transcripts. Response at 1.

The CRRD has now issued its memorandum regarding the voluminous corrections requested. Having painstakingly compared the alleged errors with the recording of the proceedings, the CRRD has made a number of corrections in its spread sheet attached to the memorandum. A review of those corrections indicates that *not a single one,* alone or in concert, could be termed sufficiently substantive so as to affect an expert's opinion. *See* Poss Memo of May 22, 2003 (attached to this Order and incorporated herein). The great majority are merely corrections in the spelling of the names of people. Despite the invective hurled by Plaintiff at the CRRD, it is now confirmed beyond any reasonable doubt that Plaintiff's representations were egregiously off-base. Indeed, the Court can only conclude that Plaintiff either has a surprisingly faulty recollection of the underlying proceedings or has been intentionally making misrepresentations regarding the transcripts for purposes of delay.

Finally, today, more than eight weeks after picking up her transcripts, more than thirteen weeks after the transcripts were ready, and more than seven and a half months after her 26(b)(4) deadline, Plaintiff still has no expert.

## II. Legal Standard

To prevail on a motion for summary judgment, the moving party must demonstrate, based on the pleadings, discovery, and any affidavits submitted, that there is no genuine issue as to any material fact and that it is thus entitled to judgment as a matter of law. *Grant v. May Department Stores Co.,* 786 A.2d 580, 583 (D.C. 2001); Rule 56(c). A trial court considering a motion for summary judgment must view the pleadings, discovery materials, and affidavits in the light most favorable to the non-moving party and may grant the motion only if a reasonable jury, having drawn all reasonable inferences in favor of the non-moving party, could not find for the non-moving party based on the evidence in the record. *Id.* at 583 (citing *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979)); *Bailey v. District of Columbia,* 668 A.2d [817, 819] 812, 816 (D.C. 1995).

## III. Analysis

In the underlying action Plaintiff, represented by Defendants, sued her podiatrist, and he counterclaimed against her. The jury at trial granted a verdict for the defendant doctor and also awarded him $40,000 on his counterclaim. In the instant action, Plaintiff alleges that Defendants committed legal malpractice in their prosecution of her medical malpractice ac-

tion. More specifically, Plaintiff contends that Defendants failed to amend the complaint, failed to obtain a certain expert, failed to make certain objections, failed to preserve the testimony of another expert, and failed to make certain filings. *See* Complaint.

In moving for summary judgment here, Defendants argue that, absent an expert, Plaintiff cannot adduce evidence as to the standard of care or evidence that Defendants somehow breached such standard. Motion at 7. Defendants are correct that, in order to prove a case of legal malpractice, "a plaintiff must establish the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of." *Mills v. Cooter*, 647 A.2d 1118, 1123 (D.C.1994). This jurisdiction has adopted the "widely followed rule that, in a legal malpractice action, the plaintiff must present expert testimony establishing the standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C.1982).

As Defendants note, this was hardly a seat-of-the-pants effort. On the contrary, Defendants took 18 depositions and ran up over $32,000 in expert fees and litigation expenses. Renewed Motion, Exh. 1 (Hanny Aff.), ¶¶ 7–8. This Court cannot determine that Defendants' alleged errors, if any actually occurred, are so obvious that a jury could assess Defendants' performance in the absence of expert testimony. Technical issues surrounding decisions, for example, about amending the complaint, taking alternative discovery, picking alternative defendants, and challenging certain rulings are all beyond the ken of the average juror and depend upon expert testimony to elucidate the issues for a jury. *See Applegate v. Dobrovir, Oakes & Gebhardt*, 628 F.Supp. 378, 382 (D.D.C.1985) ("The complexity of Mr. Applegate's first amendment claim against the government, the very extensive pretrial preparations, the several pretrial rulings by the court, and the legal and practical difficulty of second-guessing an eve-of-trial settlement, make it obvious that the malpractice issue was not cognizable by layman judging on the basis of common knowledge and common sense, unaided by expert testimony.") (internal footnotes omitted); *O'Neil*, 452 A.2d at 342 ("The subject matter of the representation, when coupled with the substantial amount of legal work appellees concededly did undertake for appellant, makes the case too complex for jury analysis without expert help.").

As there is no dispute that Plaintiff has not proffered any expert testimony, the only issue is whether the Court has improperly prevented her from doing so. The Court of Appeals has dealt on several occasions with a trial court's precluding a plaintiff from calling a standard-of-care expert because of a plaintiff's failure to abide by discovery deadlines. *See, e.g., Tisdale v. Howard Univ.*, 697 A.2d 53 (D.C.1997); *Abell v. Wang*, 697 A.2d 796 (D.C.1997).

The Court of Appeals has developed a five-part test for motions judges to consider:

(1) whether allowing the evidence would incurably surprise or prejudice the opposite party; (2) whether excluding the evidence would incurably prejudice the party seeking to introduce it; (3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully; (4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and (5) the impact of excluding the proposed testimony on the

completeness of information before the jury.

*Abell,* 697 A.2d at 801 (citations omitted).

As to the first factor, the Defendants are a prominent firm with a great deal of litigation, particularly plaintiffs' work, and attorneys with reputations to protect. *See* Hanny Aff., ¶¶ 2–3. They have been subject to a pending legal malpractice case for approximately 14 months, which cannot assist their practices or reputations. The longer Plaintiff is permitted to delay, the longer such prejudice lingers. Similarly, their legal bills for the defense of this action continue to mount. Although not incurably prejudiced, they are harmed to a certain extent by Plaintiffs inability to name an expert. *Compare Robinson v. Samuel C. Boyd & Son, Inc.*[, 822 A.2d 1093, 1101], 2003 D.C.App. LEXIS 280 at *15–16 (May 8, 2003) (no prejudice with 30–day extension).

The second factor certainly weighs in favor of Plaintiff. Excluding her evidence would undoubtedly prejudice her inasmuch as it would result in the granting of summary judgment. Yet, the Court is again bound to note that Plaintiff still has no expert, over seven months after the deadline, and none is in sight.

As set forth in Section I, *supra,* in looking at the third factor, the Court can only conclude at this point that Plaintiff's failure to name an expert is willful. *See Abell,* 697 A.2d at 803 (finding of willfulness goes considerable way in supporting court's decision to strike expert's report). Over the past seven months, Plaintiff has come up with many different reasons and excuses for her failure to file a 26(b)(4) statement, but none rings true. Her diatribes against the CRRD have proved to be entirely unfounded, and her dilatoriness in picking up transcripts belies her frantic statements about delay by the CRRD. *See*

*id.* at 802 (noting cases where plaintiff had history of dilatory conduct).

Although the last two factors are more applicable where the case actually goes to trial, *id.* at 802 n. 3, the Court will take a look at them. The fourth factor, although superficially cutting in favor of Plaintiff, actually favors the defense. While the Plaintiff might maintain that exclusion is improper where no trial date has yet been set, the Court must look both to the seven-month delay Plaintiff has occasioned and the fact that she still has no expert.

In looking at the fifth factor, the Court again can only note that no expert has appeared. Indeed, the Court is constrained to reach only one conclusion, which is that Plaintiff has no expert because no one has been willing to agree that legal malpractice was committed here.

A weighing of the factors, therefore, leads to the ineluctable conclusion that sanctions are warranted for Plaintiff's conduct. The sanction of dismissal, while severe, seems to be the only appropriate one here given Plaintiff's misrepresentations, her repeated delay, and her present inability still to either name an expert or explain credibly when she expects to have one. In addition, as an expert would be required for all of her claims, no lesser sanction— *e.g.,* partial dismissal—is available to the Court here. *See Tisdale,* 697 A.2d at 54 (court should consider lesser sanctions). The Court reaches such a conclusion despite its cognizance of the "strong judicial and societal preference for determining cases on the merits." *Abell,* 697 A.2d at 800; *Robinson*[, 822 A.2d at 1100], 2003 D.C.App. LEXIS 280 at *14.

The Court, accordingly, ORDERS that:
1. Plaintiff's Motion to Vacate Final Order is DENIED;
2. Defendants' Motion for Summary Judgment is GRANTED; and

3. The case is DISMISSED.

IT IS SO ORDERED.

May 23, 2003
Date
/s/ James E. Boasberg
Judge