**Leslie J. SOUCI, Appellant,**

v.

**WILLIAM C. SMITH & COMPANY, Appellee.**

**No. 99–CV–1086.**

District of Columbia Court of Appeals.

Argued Oct. 25, 2000.

Decided Dec. 7, 2000.

---

Patrick A. Hyde, Washington, DC, for appellant.

Roger W. Heald, Washington, DC, for appellee.

Before SCHWELB, RUIZ, and WASHINGTON, Associate Judges.

SCHWELB, Associate Judge:

This case arises from an allegation by Leslie J. Souci that William C. Smith & Company (Smith & Co.) negligently performed repairs to Mr. Souci's flooded co-op apartment. The trial judge granted summary judgment in Smith & Co.'s favor. We reverse.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

The summary judgment record, viewed in the light most favorable to Mr. Souci, *Bullock v. Nat'l City Mortgage Co.*, 735 A.2d 949, 952 (D.C.1999), reflects that Mr. Souci, a cab driver and musician who has released several compact discs, is a shareholder of the Mintwood Place Cooperative, Inc. (the Co-op). The Co-op owns the Mintwood Building at 1875 Mintwood Place, in northwest Washington, D.C. Mr. Souci is also the holder of a proprietary lease granting him the right to occupy Unit 04 of the Mintwood Building. Mr. Souci's apartment is located on the ground floor. Units 44 to 24 (numbered from the top down) are located on the three floors above. At all times relevant to this suit, Smith & Co. was the property manager of the Mintwood Building and managed it on the Co-op's behalf.

In May or June of 1997, the toilet of Unit 44, which is located above Mr. Souci's apartment, overflowed, causing flooding in the three units below it. Of the four affected units, Mr. Souci's apartment sustained the worst damage, primarily because it is located on the ground floor. In addition, Mr. Souci's floor is made of concrete, so that the water had no means of escape. Mr. Souci claims that the ceilings, walls, and wood floors in his unit were warped as a result of water damage and that fixtures attached to the walls "sagged." Smith & Co. undertook to per-

form and oversee the repair work to the damaged units, including Mr. Souci's apartment. Mr. Souci claims that he initially did all in his power to cooperate with Smith & Co. and with the insurance adjuster in connection with the repairs to his unit. However, as the work progressed, Mr. Souci became concerned that the repairs were not being adequately performed and that his apartment would not be restored to its condition before the flooding. Although Smith & Co. apparently claimed that the only repair that remained necessary was to a floor, Mr. Souci filed an affidavit in which he detailed his allegations to the contrary:

> The sheetrock repair on my bedroom ceiling did not line up with the existing ceiling[,] resulting in a horrible eyesore. The bedroom closet door jamb was left in a swollen, ruined state. The bedroom wall surfaces were not properly prepared and fungus grew underneath the new paint and caused it to bubble. Stippling dropped off the ceiling and stained the walls. There was deep staining on the floor and the supports for the radiator had become soaked and unstable. [In the bathroom, the] repair compound and old wet plaster separated and cracked after the repair. About ten floor tiles loosened as a result of the water. Plaster cracks in the wall were never repaired. Several areas of plaster bubbled up from the wall and were nev-

er sanded. The door jamb warped and did not fit properly. [In the kitchen, the] subfloor was still soaked when the new floor was laid and the floor became even more uneven. The hallway door jamb was soaked to a point of warping. The hallway floor was soaked and cupped. The trim was not properly prepared, sanded[,] or painted. [The] living room was heavily stained. Water soaked and ruined the radiator sleepers.

(Paragraphs combined; paragraph numbers omitted.)

Mr. Souci claims that he repeatedly alerted Smith & Co. to the remaining flood-related problems in his unit, and that he attempted for several months to persuade Smith & Co. to address them. He alleges, however, that Smith & Co. ignored or rebuffed his complaints. Shortly before Smith & Co. proposed to make the repairs to Mr. Souci's floor—those final repairs that Smith & Co. deemed necessary—Mr. Souci refused Smith & Co. any further access to his unit. Smith & Co. then sent Mr. Souci a check in the amount of $800 to cover the cost of the repairs to his floor. Mr. Souci declined to accept this payment and returned the check to Smith & Co.

On May 20, 1998, Mr. Souci brought the present action,[1] alleging negligence and intentional infliction of emotional distress by Smith & Co.[2] On May 24, 1999, Smith &

---

1. The complaint initially also named as defendants the tenants of the unit in which the flooding had originated, the Co-op, and the Co-op's insurer. Subsequently, Mr. Souci voluntarily dismissed the claims against all of the defendants except Smith & Co. The record does not reveal the reason for these dismissals, but Mr. Souci's counsel indicated at oral argument that no monetary settlement had been reached with any of the dismissed parties.

2. The precise theory on which Mr. Souci was proceeding against Smith & Co. was not set forth as clearly as it might have been. Paragraph 17 of the complaint, which summarizes Mr. Souci's claims against Smith & Co., reads as follows:

> Defendant Property Manager is liable to Plaintiff for utilizing Plaintiff's insurance

entitlements for different purposes, for facilitating inadequate and negligent repairs to Plaintiff's properties and for undertaking the repairs without compliance with and in gross disregard of the permit and inspection requirements of District of Columbia law. Defendant Property Manager is liable to Plaintiff for intentional infliction of emotional distress for the cavalier manner in which it ignored his pleas to restore his home and for the cavalier manner in which it deprived Plaintiff of the benefit of the insurance protection that he paid for.

Although there is little, if anything, in this paragraph to suggest that Mr. Souci was suing Smith & Co. for breach of contract (which he might arguably have done as a third party beneficiary of an agreement between the Co-op and Smith & Co.), it appears that the case was initially conceived by the parties as in-

Co. filed a motion for summary judgment. On July 16, 1999, the trial judge granted Smith & Co.'s motion in a brief written order. This timely appeal followed.

## II.

### LEGAL DISCUSSION

A. *Standard of review.*

■ "We review a grant of summary judgment *de novo,* applying the same standard as the trial judge." *Bullock, supra,* 735 A.2d at 952 (citations omitted). Summary judgment may be granted only if "there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Id.* In evaluating whether there are disputed material facts, "we view the entire record in the light most favorable to the" non-moving party, *i.e.,* here to Mr. Souci. *Id.*

B. *Mr. Souci's negligence claim against Smith & Co.*

■ In order to prevail on a claim of negligence, the plaintiff must establish that the defendant owed him a duty of care, that the defendant breached that duty, and that the plaintiff sustained harm as a proximate result of the defendant's breach. *Id.* Mr. Souci contends that he has sufficiently alleged all of the required elements of a claim of negligence, and that the facts set forth in his affidavit and supporting materials, if true, would entitle him to relief. He argues that he has raised genuine issues of material fact, and that the trial judge erred by granting summary judgment in favor of Smith & Co. Smith & Co. contends, on the other hand, (a) that Mr. Souci lacked standing to maintain his negligence action against Smith & Co., (b) that Smith & Co. had a contractual obligation to the Co-op to perform the repairs necessitated by the flooding, but owed no separate duty to Mr. Souci, and (c) that Mr. Souci has failed to allege any injury or damages for which he is entitled to recover from Smith & Co. on a negligence theory.[3] Smith & Co. therefore contends that Mr. Souci's negligence claim fails as a matter of law.

(1) *Standing.*

■ According to Smith & Co., Mr. Souci does not have standing to assert a

---

volving a contract claim. The trial judge's order granting summary judgment treated Mr. Souci's claim as sounding in contract, and the judge did not address the question whether Smith & Co. was liable in tort. At oral argument, however, Mr. Souci's attorney explicitly conceded that he was not asserting a claim for breach of contract. We take counsel at his word and address the issue no further.

On appeal, Mr. Souci has also attempted to advance a statutory claim based on the District's Consumer Protection Procedures Act, D.C.CODE § 28–3904 (1996 & Supp.2000). Because Mr. Souci concedes that this claim was never raised in the trial court, we conclude that it has not been preserved.

3. There is considerable overlap between Smith & Co.'s three theories, as presented in Smith & Co.'s submissions in the trial court and on appeal. Although we address each issue separately, we recognize that Mr. Souci must allege an injury for which he is entitled to compensation in order to establish his own standing to sue, and also in order to demonstrate that Smith & Co. owes him a duty to exercise due care. *See, e.g., Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.,* 749 A.2d 724, 731 (D.C.2000) (explaining that in order to establish standing, plaintiff must "allege personal injury fairly traceable to the defendant's unlawful conduct and likely to be redressed by the requested relief") (citation omitted); *Bullock, supra,* 735 A.2d at 952 (explaining that a negligence claim requires an allegation of compensable injury proximately resulting from defendant's breach of a duty owed to the plaintiff). For reasons set forth below, see pp. 100–02, *infra,* we conclude that Mr. Souci has sufficiently alleged a compensable injury.

claim of negligence against it. Smith & Co. bases this contention on the lack of privity of contract between the two parties. This argument would be more plausible if Mr. Souci's claim sounded in contract, but it is unpersuasive in this action for tort.

To be sure, Mr. Souci is the owner of shares in a co-operative corporation, rather than the owner of a condominium apartment or the tenant of rental property. Co-operative corporations are "legal hybrids," and disputes involving them often "present analytical difficulties." *The Clydesdale, Inc. v. Wegener*, 372 A.2d 1013, 1015 (D.C.1977). Smith & Co.'s theory that Mr. Souci lacks standing is based on the rather esoteric distinction that Mr. Souci owns shares rather than real estate, and that damage to the unit in which he lives therefore does not injure him directly.

In our view, however, Smith & Co.'s position disregards the Co-op's hybrid character and exalts form over substance. *See id.* In addition to his shares, Mr. Souci also owns the proprietary lease entitling him to occupancy of the Mintwood Building's Unit 04. Because of this lease, as we noted in *The Clydesdale*, "the relationship between [the Co-op] and [Mr. Souci,] a stockholder-tenant[,] is one of landlord and tenant." *Id.; see also First Sav. Bank v. Barclays Bank*, 618 A.2d 134, 136 (D.C.1992). We have recognized that the primary interest of any co-op owner is his proprietary lease, and that the stockholder-tenant has "leasehold rights" as well as his rights as an owner and stockholder. *The Clydesdale, supra*, 372 A.2d at 1015 (citation omitted). In other words, in addition to whatever interest Mr. Souci has in the Co-op through his stock ownership, he is also the Co-op's tenant. Under our case law, Mr. Souci's status as a tenant confers standing upon him to sue Smith & Co. for negligent conduct that has impaired Mr. Souci's enjoyment of his tenancy.

We have recently held that a tenant has standing to sue "third parties to recover damages which he or she has incurred." *Gaetan v. Weber*, 729 A.2d 895, 898 (D.C. 1999). In that case, we concluded that a tenant has standing to pursue, *inter alia*, tort claims for negligence and nuisance against a third party whose actions caused the tenant "the loss of use and enjoyment of [his] property … and/or out-of-pocket expenses for repairs." *Id.* Here, Mr. Souci, a tenant of the Co-op, *see The Clydesdale, supra*, 372 A.2d at 1015, has alleged that Smith & Co., a third party, has negligently injured his "respective interest[ ] in the leased property." *Gaetan, supra*, 729 A.2d at 898 (citation omitted). Consequently, we conclude that, subject to proof of a compensable injury, Mr. Souci has standing to pursue a claim for negligence against Smith & Co.

*(2) Existence of a duty.*

█ Smith & Co. next contends that it does not owe Mr. Souci any legal duty. It claims that it contracted with the Co-op to repair the flood damage to the Mintwood Building, that it therefore owed a duty to perform these repairs properly only to the Co-op, and that it had no additional duty vis-a-vis the occupants of the individual units.

In our view, however, Mr. Souci's status as a tenant not only confers standing on Mr. Souci to sue Smith & Co. for negligence, but also imposes on Smith & Co. a common law obligation to Mr. Souci to exercise due care when it engages in activities affecting Mr. Souci's enjoyment of his tenancy. As previously noted, we have held that a tenant has a right to recover against a third party for negligence if the third party damages the tenant's leasehold interest by failing to exercise due care.

*See Gaetan, supra,* 729 A.2d at 897; *see also Weinman v. De Palma,* 232 U.S. 571, 575, 34 S.Ct. 370, 58 L.Ed. 733 (1914) (upholding tenant's action for negligence against a third party contractor).

In *Hanna v. Fletcher,* 97 U.S.App.D.C. 310, 313–15, 231 F.2d 469, 472–74 (1956), a tenant brought an action for negligence against his landlord's contractor, alleging that she had suffered personal injuries as a result of the negligent construction of a porch. The court rejected the contractor's contention that the tenant's suit failed for lack of privity of contract. *See id.* The court's conclusion was based on foreseeability principles, because "negligent conduct often may be expected to result in injury to one reasonably foreseen as a probable user." *Id.,* 97 U.S.App.D.C. at 315, 231 F.2d at 474. "[T]he duty to safeguard" that probable user's interests can grow out of the common law and need not be based on a "contract and nothing else." *Id.,* 97 U.S.App.D.C. at 314, 231 F.2d at 473; *see also Bostic v. Henkels & McCoy, Inc.,* 748 A.2d 421, 424–25 (D.C.2000) (holding that an independent contractor owes a common law duty of care to members of the public with whom no privity of contract exists).

The rationale of these decisions applies equally to Mr. Souci's case. It is true that Mr. Souci did not personally contract with Smith & Co. for the repair of his apartment. But as Unit 04's occupant and user, and as the Co-op's tenant occupying that unit, he was not merely a "probable user" of the apartment. *Cf. Hanna, supra,* 97 U.S.App.D.C. at 315, 231 F.2d at 474. Rather, he was its *only* occupant and hence its *certain* user. It was therefore

foreseeable that negligently conducted repairs to Unit 04 would cause harm and damages to Mr. Souci personally. Consequently, the absence of privity of contract between Mr. Souci and Smith & Co., and, indeed, the lack of any contractual relationship between them, cannot defeat Mr. Souci's action for tort. Regardless of whether or not Smith & Co. has a contractual obligation to Mr. Souci, perhaps under a third party beneficiary theory,[4] it owes him an independent, common law duty to exercise due care in performing repairs to his flood-damaged apartment.

(3) *Damages.*

■ Finally, Smith & Co. contends that, even if one were to assume that Mr. Souci has standing to sue and that Smith & Co. owed him a duty of due care, this action nevertheless fails. Smith & Co. claims that this is so because Mr. Souci has sought recovery only for damage to real property which belonged to the Co-op and did not belong to Mr. Souci. *See, e.g., Gaetan, supra,* 729 A.2d at 898 (holding that "a tenant lacks the requisite ownership interest to recover damages [for injury] to real property"). Consequently, says Smith & Co., Mr. Souci has failed to allege an indispensable element of a claim for negligence, namely, that he has sustained an injury for which he is entitled to recover damages. *See Bullock, supra,* 735 A.2d at 952. Counsel for Smith & Co. explicitly conceded at oral argument, however, that, if Mr. Souci had alleged an injury personal to him, such as the impairment of his enjoyment of the tenancy, then Mr. Souci's allegations would have been sufficient, and the summary judgment in Smith & Co.'s favor would have to be reversed.

---

4. As previously noted, Mr. Souci's counsel explicitly disclaimed any reliance on a contract theory against Smith & Co., and we express no view regarding whether a hypothetical claim based on such a theory could have been successful.

But the record shows beyond peradventure that Mr. Souci does claim to have suffered a compensable injury. In his affidavit in opposition to Smith & Co's Motion for Summary Judgment, Mr. Souci stated that his "day to day living was upset due to the flooding," and that Smith & Co.'s repair work only "made the situation uglier with [its] cursory cosmetic swipes." He further averred that "[m]y use and enjoyment of my home was severely curtailed by the flood and the sl[i]pshod repairs detailed above" and that "[f]rom September of 1997 to today, June 10, 1999, I have lost the use and enjoyment of my apartment as the result of the failure of William C. Smith & Company to properly perform repairs."[5] Mr. Souci thus claims that Smith & Co.'s failure to exercise due care has proximately resulted in the loss of the use and enjoyment of his apartment, which is a leasehold interest for which a tenant is entitled to recover in negligence from a third party. As we stated in *Gaetan, supra,* 729 A.2d at 898, "the loss of use and enjoyment of one's property ... affect[s] a tenant's interests and, therefore, may be compensable."

■ In his affidavit, Mr. Souci detailed some of the specifics on which he bases his claim of loss of enjoyment. He alleged, for example, that the repair to his bedroom ceiling resulted in a "horrible eyesore," that there is "deep staining" on his bedroom floor, that "[p]laster cracks in [his bathroom] wall were never repaired," that some of the bathroom's "plaster bubbled up from the wall," that his kitchen floor became increasingly uneven, and that several doors in his apartment were "warped and did not fit properly." To put it simply, anybody whose apartment was in such a condition after it had been "repaired" would most probably enjoy it a good deal less than he did before. Consequently, we conclude that Mr. Souci has sufficiently alleged an injury to his leasehold interest which, if proved, would entitle him to recover from Smith & Co. on a negligence theory.

■ Moreover, if he can establish the truth of his allegations,[6] Mr. Souci may also be entitled to recover for some of the actual physical damage to his unit. Once a tenant has suffered an injury to an interest related to his leasehold, the associated "out-of-pocket expenses for repairs" also affect that interest and may therefore be compensable. *Gaetan, supra,* 729 A.2d at 898. Here, Mr. Souci claims that he will personally have to pay for the additional repairs that will be required in order to restore his unit to its previous condition. If he demonstrates at trial that he will have to incur these expenses as a result of Smith & Co.'s failure to exercise due care, then such expenses will be logically tied to Mr. Souci's loss of enjoyment. In such an eventuality, these expenses would "affect [his] interests" as a tenant and would therefore be compensable. *Id.*[7]

5. According to Mr. Souci, the interference with his use and enjoyment of his unit was particularly severe because, during 1997, he was working at home to prepare a CD.

6. We note that Mr. Souci's allegations of causation are disputed. Smith & Co. claims that the unfavorable physical appearance of Mr. Souci's unit did not result from negligently performed flood repairs. Rather, according to Smith & Co., it was "the result of pre-existing conditions."

7. We also note the existence of case authority in this jurisdiction to the effect that a member of a cooperative owns his unit and has legal title to it. *See Moses v. Boss,* 63 App.D.C. 381, 382, 383, 72 F.2d 1005 (1934) (per curiam) (explaining that co-op member "was the owner of [the] apartment" and "held the legal title to" it), 72 F.2d 1005, 1006, 1007.

### III.

### CONCLUSION

For the foregoing reasons, the order granting summary judgment is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.[8]

8. Mr. Souci's complaint also includes a claim for intentional infliction of emotional distress, and he has prayed for punitive damages in the amount of one million dollars. He will have to make a formidable showing in order to be entitled to recovery on either of these claims. "[A] defendant will be liable [for intentional infliction of emotional distress] 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Bernstein v. Fernandez,* 649 A.2d 1064, 1075 (D.C.1991) (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). Similarly, punitive damages are awarded only in egregious "circumstances of extreme aggravation." *Blake Constr. Co. v. C.J. Coakley Co.,* 431 A.2d 569, 578 (D.C.1981) (discussing standard for award of punitive damages in contract context); *see also Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 938 (D.C.1995) (requiring aggravation of defendant's conduct by "egregious conduct" and a "state of mind evincing malice or its equivalent" to award punitive damages in tort). These issues have not been addressed in the trial court, however, and notwithstanding the obvious difficulties confronting the plaintiff in his claims for such relief, we think it best to remand the entire case to the trial court.