Dorothy ROBINSON, Appellant,

v.

SAMUEL C. BOYD & SON, INC., Et Al., Appellees.

No. 99–CV–480.

District of Columbia Court of Appeals.

Argued Jan. 9, 2001.
Decided May 8, 2003.

---

A. Palmer Ifill for appellant.

Gerard J. Emig, for appellee Samuel C. Boyd & Son, Inc. and The PMA Group.

Dawn E. Boyce for appellee P.N. Hoffman Builders, Inc.

Before FARRELL, RUIZ and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

Dorothy Robinson alleged in her complaint that appellees negligently damaged her home, causing damage to her property as well as personal injury. The trial judge granted partial summary judgment for appellees, and a jury returned a verdict for the appellees on the remaining claim. Robinson appeals from the trial court's denial of her motion to extend time to designate a medical expert, and exclusion of her expert witnesses and her testimony regarding loss of personal property. She also argues that the trial court erred in denying her motion for summary judgment, granting appellees' motions for summary judgment, and, after verdict, denying her motion for judgment or for a new trial. We affirm in part and reverse and remand in part.

## FACTUAL SUMMARY

### *Background*

This case arises out of a fire and resulting repairs at the house in which appellant resided at 420 Farragut Street, N.W., in Washington, D.C. The house was originally owned by Novella Carter, appellant's mother, who died in April of 1989. It is undisputed that appellant and her sisters are heirs to their mother's estate and that appellant occupied the house until it was damaged by fire. Appellant claims that she held a life estate in the property, and provides as evidence the deposition of Myrna Fawcett, the successor personal representative of the estate of Novella Carter, who stated that appellant and her sisters had an informal agreement granting appellant a life estate in the house.

On April 27, 1994, appellee Samuel C. Boyd & Son ("Boyd") performed roofing work on the house. There was a fire the same day, which caused extensive damage to the roof and interior of the home. An investigation later revealed that the fire originated on the roof of appellant's home, and had been caused by heat from a workman's torch. Appellant alleged that Boyd's repairman was negligent in the use of his torch and caused the fire on the roof. After the fire, appellee PMA Group ("PMA"), the insurer of appellee Boyd, agreed to pay for the damages caused by the fire and visited appellant's home to adjust the damages caused by the fire. Myrna Fawcett, on behalf of the estate, executed a document with PMA on November 18, 1994, which released Boyd from any and all claims arising from the fire. Myrna Fawcett then contracted with appellee P.N. Hoffman Builders, Inc. ("Hoffman"), to repair the home using the proceeds from the settlement with PMA.

Appellant filed a complaint on April 28, 1997, alleging that Boyd, Hoffman, and PMA committed separate acts of negligence which caused her to suffer "personal injury and property loss and damages, inconvenience, pain of the body and mind, loss of use, in excess of $50,000." As to Boyd, the complaint alleged that during the course of their roof repair, a fire was negligently set to the roof, causing the plaintiff to suffer personal injury and property damage. As to PMA (Boyd's insurer), the complaint alleged that in undertaking the repairs from the fire, PMA failed to supervise its contractors, servants, and agents, who left the property in a state of disrepair, causing appellant's damages to be aggravated. Although the complaint listed Hoffman as a defendant, it did not allege any specific claim as to Hoffman.

### Motion to Extend Time to Complete Discovery to Name a Medical Expert

Pursuant to the initial scheduling order, plaintiff was required to designate her experts and their expected testimony in compliance with Superior Court Civil Rule 26(b)(4)[1] by October 15, 1997. On that date she filed a preliminary Rule 26(b)(4) statement,[2] a preliminary witness list, and

---

1. Rule 26(b) provides, in pertinent part:

   (b) Discovery Scope and Limits. Unless otherwise limited by order of the Court in accordance with these Rules, the scope of discovery is as follows:

   . . .

   (4) Trial preparations: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this Rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

   (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

2. Appellant's preliminary 26(b)(4) statement stated:

   [p]laintiff intends to retain an independent expert upon receipt of medical records.

   [p]laintiff will present fact witnesses who may or may not also include in their testimony opinions and conclusions based upon their observations . . . these witnesses are the doctors who treated plaintiff and whose names are listed in the medical records and . . . interrogatories, those persons who inspected the fire damage and the damage to plaintiff's property such as J.R. Nickens of the District of Columbia Fire Department, Lanny Weintraub of Structural Concepts, John Costello of the Steven A. Rosen Company.

   [t]he facts and conclusion to which these witnesses would testify are indicated in their reports which have been furnished the defendants or which will be furnished upon

a motion to extend time to complete discovery to submit a 26(b)(4) statement. In her motion to extend time to complete discovery, appellant asked for a thirty-day extension and indicated that she would need her complete medical records before she could designate a medical expert. The appellees opposed the request, claiming that appellant's medical records have always been available to her and could have been obtained pursuant to a properly executed authorization. Appellant's motion was twice denied by the trial court.[3] According to appellant, subsequent to the denial of her motion to extend time to complete discovery, she obtained her medical records and retained an expert who would have testified that appellant suffered physical injury, mental distress, and emotional injury as a result of the fire.

### Motions for Summary Judgment

After the close of discovery, Hoffman filed a motion for summary judgment contending that appellant had no standing to bring suit against Hoffman because its contract was entered into by the personal representative for the Estate of Novella Carter, not by appellant. Boyd and PMA also filed a motion for summary judgment on the grounds that (1) appellant had no standing to pursue a claim for property damage because she did not own the property, which was owned by the estate; (2) even if she had standing, the claims against Boyd were barred pursuant to the release executed by Myrna Fawcett on behalf of the estate; and (3) even if appellant had a claim against Boyd, there was no basis for a claim against PMA based on Boyd's alleged negligence because there

was no agency relationship between PMA and Boyd.

Appellant filed a cross motion for summary judgment against Boyd asserting that there was no dispute that Boyd acted negligently in repairing her roof, causing her personal and property damage. In her opposition to the motions of Boyd, PMA, and Hoffman for summary judgment, appellant argued she had standing as a joint owner of the property and life tenant; that PMA was negligent in failing to supervise the work it had contracted for with Hoffman and that Hoffman's repair work was negligently done.

The trial court partially granted the appellees' motions for summary judgment. The court determined that despite the fact that Boyd was released by the estate with regard to damage to the real property, there remained factual disputes as to whether Boyd had been released from liability for the injuries sustained by appellant and as to appellant's personal damages, which needed to be resolved at trial. The court granted, in part, Hoffman's motion for summary judgment, ruling that there could be no contract action as the contract to repair the house was entered into solely between the estate (represented by Myrna Fawcett) and Hoffman, and that the only intended beneficiary of the contract was the estate, not appellant. The court ruled, however, that to the extent appellant suffered personal injury or lost personal property, she could proceed in tort against Hoffman. The court granted PMA's motion for summary judgment because there was nothing in the record to support that PMA had responsibility to supervise Hoffman's repair work. The

---

receipt of the actual medical records and other reports.

**3.** The motions judge first denied the motion to extend discovery on October 24, 1997. On November 11, 1997, appellant filed another

26(b)(4) statement. This prompted the motions judge to rule a second time, on January 14, 1998, that the statement could not be filed late.

case then proceeded to trial against Boyd and Hoffman for injury to appellant's person and her personal property.

### Striking of Appellant's Expert's Testimony at Trial

At the beginning of the trial, the judge clarified that appellant was suing Hoffman for damages it caused to her personal property as a result of its negligent workmanship in conducting repairs from the fire, and Boyd for emotional injury to appellant and damages caused to her personal property as a result of the fire. The court noted that appellant was not making a claim for damages for emotional distress against Hoffman.

The appellees made an oral motion to exclude appellant's intended use of expert witnesses listed in the late-filed 26(b)(4) statement, which included witnesses who would testify to property damage from the Stephen A. Rosen Company and Structural Concepts, Inc. After a discussion with counsel regarding the preliminary 26(b)(4) statement that appellant had filed on October 15, 1997, see note 2, *supra*, the trial judge precluded appellant from calling witnesses listed in the late-filed 26(b)(4) statement.[4] The trial judge ruled that the preliminary statement was "totally inadequate as a 26(b)(4) statement ... [and] more indicative of what you will present and why it [is] being presented." Noting that appellant's counsel was denied an extension by the motions court, "it being the law

of the case, this [c]ourt cannot go against the order." The court ruled that appellant would be allowed to present expert testimony by J.R. Nickens of the District of Columbia Fire Department because his testimony was not obtained for the purposes of litigation and was thus exempt from the requirements of Rule 26(b)(4).

At trial, appellant sought to present evidence on her claim for personal injury (emotional distress) against Boyd and claims for loss of personal property against Hoffman and Boyd. Appellees objected to appellant's attempt to testify as to her property losses on the ground that she had no personal basis of knowledge, but was relying on the opinions contained in reports of Stephen A. Rosen Co. and Structural Concepts, Inc., the expert appraisers whose opinions the judge had precluded.[5] Based on its review of the relevant portions of appellant's answers to interrogatories and her deposition testimony, the trial judge was persuaded that appellant's testimony as to the value of her personal property was entirely dependent on the opinions of experts who were unavailable for cross-examination, and ruled that she could not testify as to the property's value. Because there was no evidence as to personal property damage, the trial judge granted Hoffman's motion to dismiss appellant's claim for loss of personal property.

That left only the claims against Boyd for personal injury related to the fire. Of-

---

4. During trial, Judge López held that, "the preliminary statement was far short of what a 26(b)(4) statement would require to be a complete 26(b)(4) statement ... So I'm [going to] have to rule that I am satisfied that the order from Judge Queen [the motions judge] in fact did not grant the opportunity to file such a [more complete] 26(b)(4) statement." In an order, Judge López did not allow appellant to call anyone from the Rosen Company because the "Preliminary Statement under Rule

26(b)(4) submitted by the plaintiff was not a Rule 26(b)(4) Statement."

5. The report of Steven A. Rosen Company is an inventory of real and personal property damaged during the fire, reflecting the price of each identified item. The Structural Concepts, Inc., report notes the "poor workmanship" of the repairs performed by Hoffman and notes damage on the walls, doors and various areas of the house.

ficer Nickels testified as to the cause of the fire. Appellant testified briefly as to her property damaged by the fire and also testified as to the emotional injuries she suffered during and after the fire. While she was not permitted to provide an expert medical opinion, she presented evidence by her treating doctor, Dr. Janet Regier, who testified as to her treatment and medications for pancreatitis, pain, hypertension and depression. The case was submitted to the jury, which returned a verdict in Boyd's favor.

### Motion for New Trial and Judgment

Appellant filed a motion for a new trial, alleging that the trial judge was biased in favor of Boyd, which had previously done roof repair work for the judge.[6] Appellant also argued that she was entitled to a new trial because the trial court abused its discretion in precluding her from testifying about the value of lost or damaged personal property. Appellant further requested judgment on her emotional distress claim against Boyd and a reinstatement of her claims for property loss.

The trial court denied appellant's motions. The submitted materials further confirmed the trial court's original decision precluding appellant from testifying as to the value of lost or damaged property. The trial court denied the motion for judgment against Boyd, or for a new trial, stating that the personal injury claim against Boyd alleging emotional distress

presented "a classic jury question inasmuch as the causal relationship between the fire on the roof and Ms. Robinson's emotional distress was very much in doubt."

## ANALYSIS

### 1. *Motion to Extend Time*

Appellant contends that the trial court erred in denying her motion to extend time to complete discovery because "the jury was deprived of expert testimony in critical areas, which would have made a difference on the outcome of the trial."[7] Appellees respond that appellant failed to set forth good cause for an extension to secure medical experts beyond the deadline, as required by Superior Court Civil Rule 16(b)(6). While we agree with appellant that the motions judge should have granted an extension of time, we conclude the error was harmless.

■ We usually defer to the exercise of the trial court's discretion under Rules 16 and 26. *See Ferrell v. Rosenbaum*, 691 A.2d 641, 646 (D.C.1997). However, we balance the concern for judicial economy against the "strong judicial and societal preference for determining cases on the merits." *See Abell v. Wang*, 697 A.2d 796, 800 (D.C.1997). In *Abell*, we reversed the grant of summary judgment and remanded to the trial court to reconsider a Rule 26(b)(4) statement filed out of time taking into account the following several factors:

---

6. The fact had been disclosed to the parties, who were given an opportunity to have the case proceed before another trial judge. Both parties gave their consent to proceed before Judge López.

7. Appellant argues in her brief that the trial court erred in denying the motion to extend time to designate a *medical* expert. Likewise, in her motion to extend time to complete discovery, appellant argued that she should receive additional time to name a medical

expert. Appellant does not argue that she should have received additional time to complete her 26(b)(4) statement to include *property* experts and never provided additional information as to the property experts. The only issue on appeal with regard to the property experts concerns Judge López's refusal, discussed *infra*, to allow appellant's property damage experts to testify based on appellant's initial incomplete 26(b)(4) statement.

(1) whether allowing the evidence would incurably surprise or prejudice the opposite party; (2) whether excluding the evidence would incurably prejudice the party seeking to introduce it; (3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully; (4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and (5) the impact of excluding the proposed testimony on the completeness of information before the court or jury.

*Id.* at 801.

Moreover, the trial court should also consider whether a less severe sanction than dismissal or summary judgment is warranted. *See id.* at 802. Likewise, in *Tisdale v. Howard University, Inc.,* 697 A.2d 53, 54 (D.C.1997) (noting that the trial court must consider the totality of circumstances in each case), we remanded for reconsideration of the trial court's denial of appellant's motion to file an expert witness designation after the discovery deadline, because the trial court failed to consider the factors enumerated in *Abell. See id.*

In this case, the motions court did not explain the reasoning behind its decision, but appears to have relied on the appellees' opposition that appellant did not have "good cause" for extending the deadline and that the extension would "necessitate setting new deadlines for all of the dates in the scheduling order." In addition, the judge's order mentioned that discovery was not due to close for another two months, on December 15, 1997. The court did not specify how appellees would suffer prejudice by an extension of thirty days, nor is there any indication that the trial court took into account potential prejudice or surprise to the appellees, or the impact to appellant's case. Moreover, as a trial date had not yet been set, nor motions for summary judgment filed, allowing a thirty-day extension would not have significantly affected the orderly progression of the trial. Under *Abell,* it is likely that a remand would be warranted in these circumstances.

■ We do not think a remand on the medical expert issue is required in this case, however, because any error was harmless. While appellant claims that a medical expert would have testified that her chronic medical problems were proximately caused by the fire, she has not designated any physician who examined her and would have offered expert testimony in support of her claim. More importantly, appellant provided significant testimony during trial about how the fire caused her to suffer many medical problems. Her treating physician testified that she saw appellant after the fire and that appellant had mentioned being concerned about the fire and that she had resumed drinking (she had previous alcohol abuse problems). The treating physician also testified that appellant was taking medication for depression, and suffered from pancreatitis, pain, dizziness, and high blood pressure. Taking the stand, appellant testified about her extreme emotional distress and medical problems after the fire, and that she suffered from stress, high blood pressure, insomnia, and flashbacks as a result of the fire. She admitted during cross-examination, however, that she suffered from some of these health problems before the fire, and does not contend that an expert would have testified otherwise. Appellant has not explained how an as-yet-unidentified medical expert would have added to what was presented by her and her doctor.

### 2. *Summary Judgment and Standing Issues*

■ We review a grant of summary judgment *de novo* to ensure that there is

no genuine issue of material fact and that the prevailing parties are entitled to judgment as a matter of law. *See Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (en banc). In ascertaining whether any material facts are in dispute, we view the entire record in the light most favorable to the party opposing the motion. *See Ferrell*, 691 A.2d at 646.

Appellant contends that the trial court erred in granting PMA's motion for summary judgment on the issue of whether PMA negligently failed to supervise the repairs to the roof of the house after PMA paid for the damages caused by Boyd. Appellant states that there is a genuine issue of fact as to whether PMA had undertaken responsibility for the repairs, but had allowed Myrna Fawcett to hire Hoffman, and neglected to supervise Hoffman's work.

■ We agree with the trial court that there is no evidence that PMA took responsibility to supervise the work performed by Hoffman. In answering interrogatory No. 22, PMA stated that "Myrna Fawcett hired P.N. Hoffman." Appellant provides no additional information or argument in her brief to demonstrate that PMA had a responsibility to oversee Hoffman. The statements in her own affidavit that "Myrna Fawcett ... selected Hoffman to do the repairs," and that "PMA issued a check to Myrna Fawcett who in turn paid Hoffman" further undercut appellant's claim. Thus we agree with the trial court that there is no evidence that PMA, an insurer that paid a claim against its insured, had responsibility for supervising the contractor hired by the claimant or negligently delegated any duty it might have had to oversee the repairs to Myrna Fawcett. Therefore, we affirm the trial court's grant of summary judgment to PMA.

The grant of summary judgment to Hoffman and Boyd presents a closer question, specifically on the issue of appellant's standing to bring suit. Both Boyd and Hoffman claimed that appellant lacked standing to bring a cause of action for damages to the property because they had entered into agreements with Fawcett, who represented the estate. The trial court held that appellant lacked standing because the agreements concerned the property, and as the personal representative of the estate which owned the property, Myrna Fawcett was the only one who could bring an action on behalf of the estate. It noted that even though appellant was an heir to the estate, and may have benefitted from the agreements, she had no legal interest in the contracts. The trial court further ruled that appellant did not provide sufficient evidence that she had a life estate in the property and that, even assuming appellant was a life tenant, the agreements were entered into between the estate and appellees, and the only intended beneficiary was the estate, not appellant. Thus, the trial court held that appellant could not bring any action against Boyd, as it had been released by Fawcett, nor against Hoffman, because its contract was with Fawcett, not appellant. However, the trial court ruled that, to the extent that appellant was legally residing in the property, she had a right to claim damages for personal injury or lost personal property against Boyd and Hoffman.

Appellant argues that the trial court erred in granting the summary judgment motion with respect to real property damages, based on her lack of standing to bring suit. Appellant does not dispute that Myrna Fawcett had legal ownership to the property, but claims that she was entitled to sue based on her life estate and tenancy. *See Gaetan v. Weber*, 729 A.2d 895, 898 (D.C.1999) (holding that tenants

have standing to sue third parties for personal damages arising from negligence).

### A. Contractual Obligations

■ Appellant claims that she had a life estate and thus is entitled to sue Hoffman for damages to the real property. From the record, it is difficult to discern what exactly appellant's legal interest in the estate might be. Appellant did not provide any evidence that she maintained a life estate in the house other than Fawcett's testimony that appellant and her sisters had an informal agreement that she would live in their mother's house. As the trial court noted, under D.C.Code § 45–306(b) (1981) a life estate may be granted only by "a deed signed and sealed by the grantor, lessor, or declarant, in person or by power of attorney or by will." Thus, we agree that appellant has not provided sufficient evidence that she had a life estate in the property. Moreover, even if she had a life estate, appellant indicated in the answers to the interrogatories that she was "part owner" of the property with her sisters, and has not provided information as to why she did not join them in this action. *See Flack v. Laster,* 417 A.2d 393 (D.C.1980) ("A party is indispensable when he has an interest in the proceeding not distinct and severable, and a final decree cannot be made in the party's absence without having an injurious effect on that interest ....").[8] Thus, we hold that on this record summary judgment was appropriate with respect to the real property claims as appellant could not maintain a suit for damages to the real property based on her asserted but unsupported life interest in the property.

■ We agree as well with the trial court that appellant, as an heir to the estate, does not have standing to bring suit as a third party beneficiary to Fawcett's contract with Hoffman. The personal representative is vested with legal title to both real and personal property owned by the decedent at the time of her death and "has the same standing to sue as the decedent had at death." *Rearden v. Riggs Nat'l Bank,* 677 A.2d 1032, 1038 (D.C.1996) (citing D.C.Code § 20–701(c) (1981)). Here, that person was Fawcett who, as personal representative, entered into the contract with Hoffman on behalf of the estate. We have held that "a beneficiary cannot bring an action directly against a third-party wrongdoer ... [r]ather, his relief is an action in equity against the trustee to compel the trustee to proceed against the third-party ...." *Rearden,* 677 A.2d at 1037. Therefore, as concerns property of the estate, appellant must assert her interest as a beneficiary of the estate by proceeding against "the entit[y] with whom [she has] a fiduciary relationship: the personal representative[ ]," not appellees. *Id.*

### B. Negligence

■ We also agree with the trial court's determination that, as the occupier of the premises, appellant had the right to sue in tort only for personal injury or loss of personal property and not for real property damage. We have recognized that "[w]hile a tenant lacks the requisite ownership interest to recover damages to real property ... a tenant may nonetheless bring suit against third parties to recover damages which he or she has incurred." *Gaetan,* 729 A.2d at 898. In addition, while reaffirming that a tenant cannot re-

---

8. Appellant also mentions in passing that she held a tenancy in common with her sisters. If she was a tenant in common, her ownership interest is severable and she might have standing to sue for real property damage on her own. *See generally Gallimore v. Washington,* 666 A.2d 1200 (D.C.1995). However, there is no evidence in the record that appellant had a cognizable tenancy in common.

cover damages for real property, we have held that the legal occupier of the premises has standing to sue for injuries personal to her or resulting from negligence which caused the "loss of use and enjoyment" of personal property. *See Souci v. William C. Smith & Co.*, 763 A.2d 96, 100 (D.C. 2000). With regard to a tenant's suit for negligence, "[t]he duty to safeguard that probable user's interests can grow out of the common law and need not be based on a contract and nothing else." *Id.* (internal quotations omitted). Thus, the trial court did not err in recognizing appellant's standing to sue Hoffman in negligence limited to claims for personal injury and lost personal property.[9]

### 3. *Expert Testimony Regarding Personal Property Damage*

■ ■ Appellant further argues that she was not allowed to prove loss of her personal property because the trial court precluded her from testifying as to the value of her personal property and did not permit her to present experts who inspected the damage to her property. The trial court excluded appellant's experts Lanny Weintraub from Structural Concepts and John Costello of the Steven A. Rosen Company from testifying because appellant's preliminary Rule 26(b)(4) statement had been inadequate.[10] As a result, at trial appellant was left with only her own knowledge of the value of her property damage, which she did not profess to have. Our cases urge trial courts to consider lesser sanctions than exclusion, *see, e.g.*,

*Weiner v. Kneller*, 557 A.2d 1306, 1309 (D.C.1989), and there is no indication that the trial court did so. Moreover, there is no indication that appellees would have been prejudiced if appellant's experts testified, as they had been given copies of the reports, had knowledge of the valuation by both Rosen and Structural Concepts, and knew since the filing of appellant's initial 26(b)(4) statement and motion for extension of time a year before trial, that appellant wished to present information about property damage through Rosen and Structural Concepts. *See Weiner*, 557 A.2d at 1312 (holding that there was no surprise or prejudice because appellees had the opportunity to depose appellant's expert and had every reason to be prepared to address the issues and did not seek a continuance).

■ ■ Appellees argue that although appellant's 26(b)(4) statement maintained that "the facts and conclusions to which these witnesses would testify are indicated in their reports," the reports are vague and unclear as to when and how the personal property was damaged. It is true that the Structural Concepts report does not specify how Hoffman neglected its duty towards appellant besides stating that the "restoration work ... requires reworking due to poor workmanship." The report is primarily focused on damage to the roof and doors of the real property, which, as we have discussed, appellant could not claim as damages. The report does not detail the basis for the opinion nor does it indicate that the expert would

---

**9.** In addition, although appellant could have sued for damages to repair the property in connection with loss of enjoyment and use, based on the *Souci* and *Gaetan* line of cases, it is not clear that these issues were raised by appellant. Although the complaint mentions "loss of use," the rest of appellant's pleadings focus on real or personal property damage or personal injury claims such as "inconve-

nience, pain of the body and mind" "mental distress, ... hypertension, [and] high blood pressure." The jury rejected appellant's emotional distress and personal property injury claims.

**10.** As discussed earlier, the motions court did not grant appellant's request to extend the time to file a complete 26(b)(4) statement.

testify about damages—other than real property damages—caused by Hoffman's "poor workmanship." The Rosen report, however, includes an inventory of real and personal property damage. Even though it does not state the cause of the damage other than a short note indicating that "the furniture was not covered by contractor," appellant—who had been living in the house and presumably was familiar with the sequence of events resulting in damage to her belongings—could have testified about which damages resulted from the fire attributable to Boyd, which were caused by Hoffman's repair work and which resulted from a combination of both. The experts' testimony on the value of the property,[11] supplemented by appellant's testimony about the cause of damage to the property, could have provided the basis for recovery for damage to these items.[12] We therefore conclude that, it was an abuse of discretion to preclude the experts from testifying about the value of the damaged personal property—a sanction that effectively terminated what was left of appellant's claims. We remand the case for a trial on this issue.

### 4. Motion for Judgment and for a New Trial

A judgment notwithstanding the verdict is proper only where no reason-

able person, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict for that party. *See District of Columbia v. Wilson,* 721 A.2d 591, 596 (D.C.1998). We agree with the trial court that this case presented a jury question on the causal relationship between the fire on the roof and appellant's emotional distress, and there was a sufficient basis for the jury to find in favor of Boyd. On cross-examination, appellant admitted that she suffered from alcoholism and mental problems before the fire, and her physician also alluded to this in her testimony. The jury properly could have found that appellant's depression and drinking were present before the fire, and were not caused or aggravated by the fire.

We also conclude that the trial court did not abuse its discretion in denying the motion for a new trial, except on the claim for damage to personal property. *See Derrington v. United States,* 488 A.2d 1314, 1339 (D.C.1985), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988). The jury verdict in favor of Boyd was not against the "great weight" of the evidence. *See id.* at 1339–40. Appellant also claims that the trial court should have recused itself and "placed itself in a conflict of interest posture" where it was un-

---

11. Appellant contests the trial court's ruling barring her from testifying as to the value of her property based on the expert reports. As a general rule, an owner's valuation of her property is admissible. *See Hartford Accident & Indem. Co. v. Dikomey Mfg. Jewelers, Inc.,* 409 A.2d 1076, 1079, 1082 (D.C.1979) (noting that when a witness testifies to facts that he knows partly firsthand and partly from reports, the judge should admit or exclude it according to the reliability of the evidence). An owner's opinion is inadmissible, however, when it is used to introduce expert testimony without producing the expert. *See id.* at 1080. ("Where the owner repeats particular out-of-court statements by an expert for their truth or purports to give the expert's view, he

improperly uses hearsay evidence."). From our review of the record, including appellant's answers to interrogatories, the trial court properly precluded appellant from testifying as to damage to her personal property because appellant was essentially reading the experts' reports into evidence.

12. There is also some evidence that might support a claim for "loss of enjoyment" or "repair" damages in the Structural Concepts report dated September 17, 1997, noting "poor workmanship" on the roof and water damage on some of the walls and doors. *See Souci,* 763 A.2d at 100.

able to fairly rule for or against Boyd. She has articulated no basis for the alleged conflict of interest, see *supra* note 6, other than conclusory statements about various court rulings against appellant, including some already discussed and rejected, such as that she should have been allowed to testify as to the damage to her personal property. Thus, we perceive no abuse of discretion in the trial court's denial of the appellant's motion for a new trial.

*Affirmed in part, and reversed and remanded in part.*