Evangeline SAMM, Appellant,

v.

John MARTIN, et al., Appellees.

No. 04–CV–915.

District of Columbia Court of Appeals.

Submitted July 19, 2005.

Decided Dec. 28, 2007.

Evangeline Samm, pro se.

Joanne Sgro, Washington, was on the brief for appellees John Martin, Patrick Blades, and Joan Waldron.

Randell Hunt Norton, Kenneth G. Stallard and Tamika L. Taylor, Washington, were on the brief for appellee William C. Smith & Co., Inc.

Before FARRELL and RUIZ, Associate Judges, and KERN, Senior Judge.

1. Appellant sued the individual defendants and the company separately, and the trial court consolidated the cases.

2. There are many more items not in this summary that appellant claims are missing.

RUIZ, Associate Judge:

Appellant appeals from a summary judgment dismissing her claims of conversion and negligent supervision against appellees. Appellant is a tenant in an apartment building managed by appellee William C. Smith & Co., Inc. She sued John Martin and Patrick Blades, who worked as desk clerks at the building on behalf of the management company, and her neighbor, Joan Waldron, for $10,000,000, claiming that they stole numerous items of personal property from her apartment. Appellant also sued the apartment management company for $50,000,000, claiming negligent supervision over the alleged thievery of its employees, Martin and Blades, during the course of their employment.[1] We affirm in part and reverse in part.

## Factual Summary

Following is a summary of appellant's claims that appellees are responsible for the disappearance of her personal property.[2] In October 2002, appellant gave a key to her apartment to John Martin requesting that he water her plants while she and her mother traveled to Africa. They returned from their trip a month later, in November. In February 2003, appellant began to notice that various items in her apartment were missing. For example, appellant stated in a deposition, in February she purchased two "bubble" champagne glasses and left them in her apartment. She went out for two hours, and came back to find the glasses missing. She also noticed that her apartment was "rearrange[d]" and that other items were missing as well.[3] [*Id.*].

3. Appellant called the police several times throughout this period, apparently to no avail because they simply told her to change her locks and mark her personal property.

Later on, appellant claims, the individual appellees began to flaunt their alleged thievery in her face. She said that Martin took three chairs from her mother's apartment;[4] she found one in the apartment building's lobby and two discarded in an alley. She said that Joan Waldron (who is Blades' grandmother and appellant's next door neighbor) also took and then threw out a large Jell-O display box that belonged to appellant. According to appellant, "Most of the items that [Martin] stole . . . , he put them by trash compartments. And for some strange reason, I will be walking or going downstairs or walking down the basement, and I encounter them."

Appellant testified in deposition that she saw *her* candy jar (with *her* candy in it) on Martin's desk. She also claims to have seen Martin eating out of her dish and bowl, and that he had her towel inside his laundry bag that was left outside his office. Martin decorated the lobby of the apartment building with Halloween dolls that she had bought from CVS two years earlier. Appellant also claims to have seen Martin wearing an Egyptian ankh that belonged to her.

Appellant claims that while she was away in Africa, Martin stole her coin collection, including a very rare Ghanaian half-dime, as well as her stamp collection. She believes that Martin stole them because she had advised him to start his own collection as an investment, and had shown him her collection a month before she went to Africa. Appellant also said, however, that the Ghanaian half-dime had been missing since May 2002, prior to her trip in October. She also admitted that the coin collection actually belonged to her mother.

Appellant testified that she saw Martin's wife wearing appellant's clothes, and that when she encountered her in the street wearing them, Mrs. Martin "jerked and, like, she wanted to run. She wanted to change directions." Appellant also said that Waldron used to wear appellant's clothing.

Appellant claims that she saw Blades, the night clerk, with various items that were missing from her closet, such as a laptop computer, speakers, CD players, Japanese animation, and a Play Station. That same night, she saw Martin remove from his office eight Lalique vases appellant claims belonged to her mother. Appellant had last seen the Lalique vases in her closet two years before she went on her trip to Africa.

According to appellant, she has since changed the locks to her apartment using an independent locksmith so that appellees cannot gain access with a master key; she claims that nothing has been missing since then.

### Analysis

 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c). We review appeals from summary judgments *de novo. See Blackman v. Visiting Nurses Ass'n,* 694 A.2d 865, 868 (D.C.1997). We review the entire record in the light most favorable to appellant as the party opposing appellees' motion for summary judgment. *See Robinson v. Samuel C.*

---

4. Appellant and her mother did not live in the same apartment, but both lived in the same building.

*Boyd & Son, Inc.*, 822 A.2d 1093, 1102 (D.C.2003).

*Summary judgment for the individual appellees on conversion*

Appellant's claim for damages resulting from the theft of her property can be divided into three categories: items belonging to her mother, items that were already missing before she took the trip to Africa, and items that went missing during and after the trip—some of which she later saw in appellees' possession. The trial court properly entered summary judgment as to the first two categories, but erred as to entering summary judgment with respect to the items in the third category.

■ Appellant cannot prevail on a claim of conversion related to her mother's property because she does not have any legal interest in them, and has no standing to sue on her behalf. *See Robinson*, 822 A.2d at 1103. Nor can appellant prevail, as a matter of law, with respect to those items that had been missing before she went to Africa. Her case rests on the theory that appellees started taking her things after she went away to Africa because that is when she gave Martin a key to her apartment. If the items were already missing before she took the trip, her claim that it was Martin and the others who took them after she left has no factual support in the record and is purely speculative.[5] Thus, on this claim, there is no *genuine* dispute on any issue of material fact. *See O'Malley v. Chevy Chase Bank*, 766 A.2d 964, 973 (D.C.2001).

■ As to the items that she discovered were missing after the Africa trip, our review of the record leads us to conclude that appellant's claims were supported by evidence (her deposition testimony)—and permissible inferences from that evidence—which viewed in the light most favorable to appellant were specific enough to overcome a charge that appellant's claims were mere speculation or conjecture. *See* Super. Ct. Civ. R. 56(e) (party opposing motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial through affidavits, depositions, or answers to interrogatories). Although the individual defendants flatly denied appellant's accusations, their contending testimony created a dispute on a material fact—in this case, a matter of credibility—that is for the fact finder to resolve. Therefore, summary judgment was improper. *See Claytor v. Owens–Corning Fiberglas Corp.*, 662 A.2d 1374, 1384 (D.C.1995).

■ Specifically, appellant claims, through deposition, not only that she found some of her things missing, but that she did so after appellees had access to enter her apartment and that she subsequently saw appellees at various times in possession of missing items she recognized as her own. *Cf. Grant Constr. Corp.*, 406 A.2d at 1269. Moreover, her assertion that once she changed the lock to her apartment the thefts came to an end, adds to the weight of her accusation as it permits a reasonable inference that appellees were responsible for the theft. We disagree with the trial court's reasoning that appellant could not prove that appellees

---

**5.** According to appellant, the management company (and by inference, its employees) previously have gained access to her apartment using a master key. However, unless there is additional evidence linking appellees to the items' disappearance, the simple fact of access is insufficient to sustain liability for conversion. *See Grant Constr. Corp. v. Harris*, 406 A.2d 1268, 1269 (D.C.1979) (holding that plaintiff's testimony that defendant had a key to her home and some items disappeared when she left the house was insufficient to hold defendant liable for plaintiff's lost items).

took from her apartment items that were "generic" in the sense that they are generally available for purchase, such as housewares, clothing and electronic equipment, unless they could be identified by monograms or serial numbers. Although there may be certain types of commodity goods that are indistinguishable, and clear markings linking an item to its owner would, no doubt, add to the weight of the evidence, the fact that certain items are generally available for purchase does not necessarily mean that a particular one can never be identified as belonging to a particular person by reference, for example, to age, color, features, etc. In criminal cases where the standard of proof is higher than in a civil case such as this, owners regularly testify to the identity and value of their stolen items. *See Salim v. United States,* 480 A.2d 710, 713, 716 (D.C.1984) (sustaining misdemeanor conviction for receiving stolen property based on owner's description and value of car tires); *Minor v. United States,* 475 A.2d 414, 415–17 (D.C. 1984) (remanding for jury consideration of owners' testimony on value of stolen property: brass dish, transcriber, postage machine, adding machines and calculators, camera, radio, and electric razor); *Comber v. United States,* 398 A.2d 25, 26 (D.C. 1979) (sustaining misdemeanor conviction for receiving stolen property where owner recognized television set, radios, clothing, and shoes found in defendant's possession). Moreover, the jurors could infer (if they chose to believe appellant) that it would be unusual in the extreme for defendants to have the same type and number of certain items—even if, individually, the items are generally available—as appellant claims she owned and have been missing. Appellant produced several exhaustive lists of specific items that she alleged appellees took from her apartment. At this stage of the case, it is not for us—nor for the trial court—to decide whether, if the

case had proceeded to trial, appellant would (or would not) have persuaded the fact finder of her version. "It is not the court's function to resolve factual questions [at summary judgment], but to determine whether there are any material factual issues." *Young v. Delaney,* 647 A.2d 784, 788 (D.C.1994) (citing *Dodek v. CF 16 Corp.,* 537 A.2d 1086, 1092 (D.C.1988)). Therefore, we remand with instructions to the trial court to proceed to trial with respect to items within this third category.

### Summary judgment for the management company on negligent supervision

We conclude that the trial court properly granted summary judgment for the management company. There is no evidence that the management company was on notice of the alleged misconduct of its employees other than appellant's proffer that another tenant's jewelry was stolen—but without linking appellees to that theft. *See Giles v. Shell Oil Corp.,* 487 A.2d 610, 613 (D.C.1985) ("To invoke this theory of liability it is incumbent upon a party to show that an employer knew or should have known its *employee* behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.").

The judgment of the trial court is

*Affirmed in part and remanded in part.*